IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD J. SILVERBERG :
: CIVIL ACTION
v. :
: NO. 19-2691
CITY OF PHILADELPHIA *et al.* :

**MEMORANDUM**

**SURRICK, J.**                                                                                       **AUGUST   27  , 2019**

      Presently before the Court are Plaintiff Richard J. Silverberg's Motion for Preliminary Injunction ("Injunction Motion," ECF No. 3), Motion for Temporary Restraining Order ("TRO Mot.") (ECF No. 5), and Amended Motion for TRO ("Am. TRO Mot., ECF No. 11). Plaintiff's Motions and his claims in this action arise from efforts by the City of Philadelphia (the "City") to collect on a judgment in its favor and against Silverberg and his former law firm for multiple years of unpaid business privilege and wage taxes, plus penalties and interest. For the reasons that follow, Plaintiff's Motions for will be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**[1]

      Silverberg is an attorney and formerly the sole principal at the law firm of Richard J. Silverberg & Associates, P.C. ("Silverberg P.C."). (Compl. ¶¶ 1, 12.) In addition to the City, the other Defendants in this action are several attorneys employed in the City Solicitor's Office, Law Department, or Department of Revenue during the time relevant to this action (the "City Defendants").[2] (*Id.* ¶¶ 4-10, 15-21.) In addition, Plaintiff names as Defendants the law firm

---

[1] The factual background is undisputed and is derived from Plaintiff's Complaint (ECF No. 1), Motion for Preliminary Injunction, and Motion for TRO.

[2] The City Defendants are James Kenney, Mayor of Philadelphia; Marcel S. Pratt, Esquire, City Solicitor; Frank Breslin, City Revenue Commissioner–Chief Collections Officer; Diana P. Cortes, Esquire, Chair, Litigation Group, City Law Department; Marissa O'Connell,

Linebarger Goggan Blair & Sampson, LLP ("Linebarger"), which has served as outside counsel for the City, and Christopher W. Dean, Esquire, an attorney with the Linebarger firm. (*Id.* ¶¶ 3, 11, 14, 22.)

In March 2008, the City filed a Complaint in the Court of Common Pleas of Philadelphia County, seeking a judgment against Silverberg and Silverberg, P.C. for unpaid business privilege and wage taxes, plus penalties and interest, for certain periods between 1992 and 2004. (*Id.* ¶ 26; *see also*, Compl., *City of Phila. v. Richard J. Silverberg & Assoc., PC, et al.*, No. 080301510 (Phila. Cty. Ct. Com. Pl.) (the "State Case"), ECF No. 5-1.) Silverberg and his firm did not respond to the City's Complaint in the State Case and, on June 3, 2008, a default judgment in the amount of $310,586.53 was entered against Silverberg and Silverberg, P.C.[3] (Compl. ¶ 27; State Case Dkt., entry dated 6/3/2008, ECF No. 5-5.)

On or about September 25, 2008, the City filed a Praecipe for Writ of Execution in Attachment against Silverberg P.C.'s banks, Commerce Bank and Wachovia Bank, and the Writ

---

Esquire, Deputy City Solicitor, Tax and Revenue Unit, City Law Department; Brian R. Cullin, Esquire, Deputy City Solicitor, Tax and Revenue Unit, City Law Department; and Kelly Diffily, Esquire, Senior Attorney, Appeals Unit, City Law Department. (Compl. ¶¶ 4-10, 15-21.)

[3] The judgment entered in the State Case is the total of unpaid taxes, interest, penalties, and fines alleged to be owed by Silverberg and Silverberg, P.C. in the five counts of the City's Complaint as follows:
- Count I—$143,334.64, comprised of $44,976.65 in tax principal, $4,100.91 as 10% penalty for unpaid wage taxes, $36,725.44 in then-current interest, and $57,531.64 in then-current penalties;
- Count II—$20,458.25, comprised of $4,474.13 in tax principal, $447.41 as 10% penalty, $6,278.66 in then-current interest, and $9,258.05 in then-current penalties;
- Count III—$104,793.64, comprised of $36,535.04 in tax principal, $3,653.50 as 10% penalty, $25,144.19 in then-current interest, and $39,460.91 in then-current penalties;
- Count IV—$42,000, comprised of $300 per violation in fines for 140 violations of the City Code for failing to file tax returns and/or to pay taxes when due.

(State Case Compl., ECF No. 5-2.)

was then served on the banks by the Sheriff. (Compl. ¶ 28; State Case Dkt., entries dated 9/25/2008 and 10/9/2008.) On or about October 22, and November 8, 2008, the City dissolved the Writs against Commerce Bank and Wachovia Bank, respectively. (Compl. ¶ 30; State Case Dkt., entries dated 10/22/2008 and 11/4/2008.) On June 3, 2013, the City filed a Suggestion of Non-payment, pursuant to 53 Pa. Stat. Ann. § 7183, to continue its lien. (State Case Dkt., entry dated 6/3/2013.)

Silverberg alleges that the City took no further action to execute on the 2008 judgment until June 15, 2017, when Defendant Dean sent Silverberg a letter advising that Linebarger had been retained to collect the judgment; demanding immediate payment of same, including interest and penalties; and stating that absent payment, the firm would recommend that the City levy or seize Silverberg's property to satisfy the judgment. (Compl. ¶ 32.) In the ensuing months, Silverberg had several communications with Dean concerning a possible resolution of the City's claims, but the matter was not resolved. (*Id.* ¶ 33-34; Silverberg Aff. ¶ 6, ECF No. 5-3.)

On or about July 16, 2017, Silverberg filed a Motion for Judgment of *Non Pros*, or in the Alternative, to Enjoin Enforcement of the Judgment (the "*Non Pros* Motion") in the State Case, contending that the City's inaction from 2008 until 2017 constituted a "lack of due diligence" and failure to "proceed with reasonable promptitude." (Compl. ¶ 35; *see also* State Case Dkt., entry dated 7/16/2017.) The trial court in the State Case denied Silverberg's *Non Pros* Motion. (Compl. ¶¶ 37-38.) On April 4, 2019, the Commonwealth Court of Pennsylvania affirmed.[4] *See*

---

[4] The Commonwealth Court affirmed the State Case trial court's holdings that: (1) "the concept of *non pros* [was] wholly inapplicable" where the City "[had] already expeditiously and diligently litigated [its] case to a final judgment and disposition"; and (2) Silverberg's request to enjoin the judgment also lacked merit because the City "has a statutory right to execute upon its judgment within 20 years of its entry." *Richard J. Silverberg & Assoc., P.C.*, 2019 WL 1502343, at *4 (reprinting trial court opinion).

*City of Phila. v. Richard J. Silverberg & Assoc., P.C.*, No. 1783 C.D. 2017, 2019 WL 1502343 (Pa. Commw. Ct. Apr. 4, 2019) (affirming and adopting opinion of State Case trial court). On July 1, 2019, Silverberg filed a Petition for Allowance of Appeal in the Pennsylvania Supreme Court, to which the City filed an Answer. *See* Dkt., *City of Phila. v. Richard J. Silverberg & Assoc.*, No. 345 EAL 2019 (Pa.).[5] That Petition is currently pending. *Id.*

On May 14, 2018, while Silverberg's above-noted appeal was pending, the City again filed a Suggestion of Non-payment, pursuant to 53 Pa. Stat. Ann. § 7183, to continue its lien. (State Case Dkt., entry dated 5/14/2018.) After the Commonwealth Court affirmed the denial of Silverberg's *Non Pros* Motion, Silverberg exchanged a series of emails with attorneys in the City Solicitor's office regarding the unpaid tax judgments. On April 9, 2019, Silverberg sent an email to Jane Istvan, Chief Deputy City Solicitor, Appeals Unit, in which he expressed his view that the City was "improperly utilizing [unpaid tax] judgments (and the associated [interest and penalties]) as the equivalent of a bond or other investment" by "sitting on judgments for a period of years and then selectively enforcing them." (Compl. ¶ 44; TRO Mot. 6.) In response, Defendant Diffily sent Silverberg and email stating:

> The [Commonwealth Court] opinion supports the City's view that it not only can, but should, pursue collection of tax delinquencies, particularly where such monies finance important public initiatives that benefit Philadelphia's citizens.

(Compl. ¶ 45.) Subsequently, Diffily advised Silverberg that Drew Salaman, Esquire, of the Salaman/Henry law firm would be handling collection of the judgment. (*Id.* ¶ 46.) On April 17, 2019, Salaman sent Silverberg a series of emails stating that the City was then demanding a total of $276,400.93, inclusive of interest and penalties, and advising Silverberg to add 6% simple

---

[5] We may take judicial notice of the appellate court dockets in the State Case as matters of public record. *See* Fed. R. Evid. 201(b) (permitting judicial notice of matters of public record).

4

annual interest from the date of entry of the State Case judgment to the present. (*Id.* ¶ 47.) On or about April 23, 2019, Silverberg sent Salaman and Diffily an email attaching a draft of the Complaint that Silverberg ultimately filed in this action and advising that he was prepared to file the Complaint in this Court later that week. (*Id.* ¶ 48.) On or about April 29, 2019, Defendant Cortes sent Silverberg a letter stating, *inter alia*, that the City regarded his draft Complaint as "baseless, frivolous, and unreasonable," and advising that if he proceeded to file such an action, the City would "vigorously contest it and seek sanctions from the federal court." (*Id.* ¶ 49.)

During the ensuing approximately two months, Silverberg and the City were engaged in certain discovery disputes in the State Case, the details of which are not relevant to the instant Motions. (*See id.* ¶¶ 50-55.) The City also continued its efforts to collect on the State Case judgment and made a series of escalating settlement demands to Silverberg. (*Id.* ¶¶ 56-60.)

On June 20, 2019, Silverberg commenced the instant action, asserting claims against all Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and common law. Silverberg's ten-count Complaint alleges the following claims: RICO – obstruction of justice, 18 U.S.C. § 1951 (Count I); RICO – obstruction of justice, 18 U.S.C.§ 1512 (Count II); RICO – obstruction of justice, 18 U.S.C. § 1503 (Count III); RICO – mail and wire fraud, 18 U.S.C. § 1341, 1343 (Count IV); RICO – conspiracy, 18 U.S.C. § 1962(d) (Count V); abuse of process (Count VI); fraud (Count VII); negligent misrepresentation (Count VIII); intentional infliction of emotional distress (Count IX); and civil conspiracy (Count X). (*See generally*, Compl.)

Although Silverberg filed the Complaint on June 20, 2019, the Complaint was not served on the City and City Defendants until on or about August 13, 2019.[6] (City Opp. to TRO Mot. 2, ECF No. 9.) Contemporaneous with service of the Complaint on the City and City Defendants, Silverberg filed the instant Injunction Motion. The Injunction Motion seeks to enjoin the Defendants "from any further collection and/or enforcement, including any discovery and/or related activities, in connection with the judgment of June 3, 2008 [in the State Case]." (Injunction Mot., Proposed Order.)

On or about August 15, 2019, the City filed in the State Case Praecipes to Issue Writs of Execution in Attachment with respect to the judgment directed to seven banks as garnishees. (*See* TRO Mot. 10; State Ct. Dkt., entries dated 8/15/2019.) On August 16, 2019, Silverberg filed the instant TRO Motion, seeking an order temporarily restraining Defendants "from any further collection and/or enforcement actions, including any discovery, execution, attachments and/or related activities, in connection with the [June 3, 2008 judgment in the State Case]." (TRO Mot., Proposed Order.)

On August 20, 2019, the City and City Defendants filed their Response in opposition to the TRO Motion. The same day, the Court held a hearing on the TRO Motion at which Silverberg and counsel for the City and City Defendants appeared and presented argument. On August 21, 2019, Silverberg filed the Amended TRO Motion, addressing certain legal issues raised at the August 20 hearing. The Amended TRO Motion seeks the same relief as the TRO Motion. (Am. TRO Mot., Proposed Order.) On August 22, 2019, the City and City Defendants

---

[6] The Complaint was served on Linebarger and Dean on or about August 22, 2019. (*See* Not. of Appearance, ECF No. 13.)

filed a Response in opposition to the Amended TRO Motion. (City Opp. to Am. TRO Mot., ECF No. 12.)

## II. DISCUSSION

At this juncture, the threshold issue before the Court is not whether Plaintiff has satisfied the well-established requirements for obtaining a preliminary injunction or temporary restraining order.[7] Instead, the dispositive question here is whether this Court has the authority to enjoin further action, including "collection and/or enforcement actions, . . . discovery, execution, attachments and/or related activities," in connection with the June 3, 2008 judgment that was issued in the State Case and affirmed by the Pennsylvania Commonwealth Court.[8]

Silverberg argues that we may do so because, in his view, the ongoing execution and collection proceedings in the State Case "'threaten[] to frustrate proceedings and disrupt the orderly resolution of the federal litigation.'" (Am. TRO Mot. 2 (quoting *In re Diet Drugs*, 282 F.3d 220, 226 (3d Cir. 2002) ("*Diet Drugs I*")).) Specifically, Silverberg contends that Defendants are engaging in the "malign tactical use, and weaponizing" of the State Court proceedings as a "preemptive strike" against his claims and requests for injunctive relief in this

---

[7] In order to obtain the "extraordinary remedy" of a temporary restraining order or preliminary injunction, the moving party must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *See* Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); *see also Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) ("The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction.").

[8] We note that Silverberg's filing of a Petition for Allowance of Appeal in the Pennsylvania Supreme Court does not operate to stay the trial court proceedings in the State Case. *See* Pa. R.A.P. 1313 ("A petition for permission to appeal shall not stay the proceedings before the lower court or other government unit, unless the lower court or other government unit, or the appellate court or a judge thereof shall so order.")

case. (*Id.* at 2-3 (citations omitted).) The City argues that the Anti-Injunction Act, 28 U.S.C. § 2283, precludes the injunctive relief Silverberg seeks and that this case does not fall within any of the exceptions to that Act. The City also argues that Silverberg's Motions must be denied under the *Younger* abstention doctrine.

We agree with the City that under the circumstances of this case, the Anti-Injunction Act prohibits us from granting the relief requested in Silverberg's Motions.[9] "The Anti-Injunction Act provides that '[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Jaye v. Attorney Gen. New Jersey*, 706 F. App'x 781, 784 (3d Cir. 2017), *cert. denied sub nom. Jaye v. Porrino*, 138 S. Ct. 927 (2018), (quoting 28 U.S.C. § 2283). The phrase "proceedings in any court of any state" is

---

[9] At this time, we do not determine whether the *Rooker-Feldman* doctrine may deprive the Court of subject matter jurisdiction over Silverberg's claims. "The *Rooker-Feldman* doctrine strips federal courts of jurisdiction over controversies 'that are essentially appeals from state-court judgments.'" *Cardillo v. Neary*, 756 F. App'x 150, 153 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2700 (2019) (quoting *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014)). Although "the applicability of the doctrine is 'narrow,'" it applies to "'cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Parness v. Christie*, 751 F. App'x 277, 280–81 (3d Cir. 2018).

The Court raised the potential applicability of *Rooker-Feldman sua sponte* at the August 20, 2019 hearing, and the parties briefly addressed this issue in their post-hearing submissions. (*See* Am. TRO Mot. 6-7; City Opp. to Am. TRO Mot. 5-6.) The parties' discussion of the *Rooker-Feldman* doctrine was confined to the pending Motions, Defendants have not yet answered or otherwise moved in response to Silverberg's Complaint, and their responses are not yet due. Under these circumstances, and in light of the incomplete record currently before us, we will defer further discussion regarding the potential applicability of the doctrine.

"comprehensive." *Hill v. Martin*, 296 U.S. 393, 403 (1935). As the Supreme Court has explained:

> It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. It applies to appellate as well as to original proceedings; and is independent of the doctrine of res judicata. It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on a judgment,but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.

*Id.*; *see also Jos. L. Muscarelle, Inc. v. Cent. Iron Mfg. Co.,* 328 F.2d 791, 793 (3d Cir. 1964) ("[A]n injunction against execution or any other proceeding to enforce a state judgment is forbidden as well as one against the prosecution of state litigation to obtain a judgment." (citing *Hill v. Martin*, 296 U.S. at 403)).

Moreover, the exceptions to the Anti-Injunction Act "are narrow and are not to be enlarged by loose statutory construction." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.* (*Diet Drugs II*"), 369 F.3d 293, 305 (3d Cir. 2004); *see also Valle v. Etemad*, No. 04-969, 2005 WL 579813, at *1 (E.D. Pa. Mar. 11, 2005) (citing *Diet Drugs II* and obsersving that "[e]xceptions to the Anti-Injunction Act must be narrowly construed") The third exception—to "protect or effectuate [the federal court's] judgments"—clearly does not apply here, as no federal court judgment has been issued related to the parties' dispute. Silverberg does not argue otherwise. The other two exceptions also do not apply.

"The Act of Congress exception applies where an 'Act of Congress clearly creating a federal right or remedy enforceable in a federal court of equity[ ] could be given its intended scope only by the stay of a state court proceeding.'" *Valle*, 2005 WL 579813, at *1 (quoting *Mitchum v. Foster*, 407 U.S. 225, 238 (1972)). As the court in *Valle* held, the RICO statute does not authorize this court to enjoin the ongoing State Case proceedings or execution on the

judgment issued therein. *Id.* Equally inapplicable is the "necessary in aid of jurisdiction" exception. That exception "applies only where 'some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" *Id.* (quoting *Diet Drugs II*, 369 F.3d at 305). Here, the ongoing proceedings in the State Case, including the proceedings to execute on the June 3, 2008 judgment, will not impair this Court's ability to decide the RICO and common law claims alleged in this action. The cases Silverberg relies upon are inapposite because, as the City notes, "[t]his case is not a class action, a multi-district consolidated litigation, or . . . a complex litigation." (City Opp. to Am. TRO Mot. 2 (distinguishing *Diet Drugs I* and *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203-04 (3d Cir. 1993)).

We further find that the *Younger* doctrine requires denial of Plaintiff's requests for injunctive relief because such relief would interfere with pending state court proceedings. *See Younger*, 401 U.S. 37, 41 (1971). "The *Younger* abstention doctrine 'reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" *Cresci v. BCB Cmty. Bank*, 728 F. App'x 145, 148 (3d Cir. 2018) (quoting *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1200 (3d Cir. 1992)). "A federal court should abstain under the Younger doctrine when there are (1) ongoing state proceedings that are judicial, (2) the proceedings implicate important state interests, and (3) the proceedings afford an adequate opportunity to raise the federal claims." *Id.* (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)). Although the *Younger* doctrine originally concerned only pending state criminal proceedings, the Supreme Court has since extended the doctrine to "to particular state civil proceedings that are akin to criminal prosecutions, or that implicate a

[s]tate's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73, (2013) (internal citations omitted). The State Case is precisely the kind of state proceeding to which *Younger* abstention applies. The State Case is an ongoing judicial proceeding, it involves important state interests regarding the enforcement of judgments and the collection of taxes, and the proceedings afford, and have afforded, Silverberg an adequate opportunity to challenge both the judgment and its enforcement.

## III. CONCLUSION

For the foregoing reasons, Silverberg's Motions will be denied. An appropriate order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**