# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **RICHARD J. SILVERBERG,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | **Case Number** |
| | : | **19-cv-2691** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2019, upon consideration of Defendants the City of Philadelphia, Mayor James Kenney, Marcel S. Pratt, Esq., Frank Breslin, Diana P. Cortes, Esq., Marissa O'Connell, Esq., Brian R. Cullin, Esq., and Kelly Diffily, Esq.'s Motion to Dismiss Amended Complaint and Memorandum of Law in Support, it is **HEREBY ORDERED** that the Motion is **GRANTED**.   Plaintiff's' claims are **DISMISSED with prejudice.**


BY THE COURT:


_____
The Honorable R. Barclay Surrick

1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD J. SILVERBERG,** | : |
| **Plaintiff,** | : |
| | : |
| **V.** | : **Case Number** |
| | : **19-cv-2691** |
| **CITY OF PHILADELPHIA, et al.,** | : |
| **Defendants.** | : |
| | : |
| | : |

### CITY OF PHILADELPHIA AND CITY DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Defendants, the City of Philadelphia, Mayor James Kenney, Marcel S. Pratt, Esq., Frank Breslin, Diana P. Cortes, Esq., Marissa O'Connell, Esq., Brian R. Cullin, Esq., and Kelly Diffily, Esq., by and through their undersigned counsel, hereby file this Motion to Dismiss Plaintiff Richard J. Silverberg's Amended Civil Action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Pursuant to Local Rule 7.1(c), Defendants hereby incorporate by reference the attached Memorandum of Law as though fully set forth at length herein.

Respectfully submitted,

Date: <u>September 17, 2019</u>

<u>/s/ Lydia Furst</u>
Lydia Furst
Deputy City Solicitor
Sean McGrath
Assistant City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3573
Lydia.Furst@phila.gov

1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD J. SILVERBERG,** : | |
| **Plaintiff,** : | |
| : | |
| **V.** : | **Case Number** |
| : | **19-cv-2691** |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |
| : | |
| : | |

### MEMORANDUM OF LAW IN SUPPORT OF CITY OF PHILADELPHIA AND CITY DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (12(b)(6)

Defendants, the City of Philadelphia (the "City"), Mayor James Kenney, Marcel S. Pratt, Esq., Frank Breslin, Diana P. Cortes, Esq., Marissa O'Connell, Esq., Brian R. Cullin, Esq., and Kelly Diffily, Esq. (collectively, "City Defendants"),[1] by and through their undersigned counsel, hereby file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Richard J. Silverberg's ("Plaintiff") Amended Civil Action ("Amended Complaint") for Lack of Subject-Matter Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] A suit brought against a public official in their official capacity is equivalent to a suit brought against the public entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Therefore, naming the City as a defendant is sufficient and the City Defendants, named in their official capacities, should be dismissed as defendants.

TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 4

II.  FACTS AND PROCEDURAL HISTORY ........................................... 6

     A.   Plaintiff Fails to Pay Taxes and the City Obtains a Judgment....................... 6

     B.   The City Attempts to Execute Upon the Judgment, Plaintiff Fails to Satisfy the
          Judgment, and the City Revives the Judgment. ............................................. 6

     C.   The City Attempts to Negotiate with Plaintiff, Plaintiff Attempts to Vacate the
          Judgment, and Plaintiff Threatens Legal Action Against the City. ..................... 7

     D.   The City Attempts to Enforce the Judgment Again and Plaintiff Sues the City in
          Federal Court. ................................................................................... 10

III. ARGUMENT ................................................................................. 13

     A.   THE ROOKER-FELDMAN DOCTRINE, YOUNGER ABSTENTION DOCTRINE,
          AND PRINCIPLES OF COMITY REQUIRE DISMISSAL OF ALL COUNTS OF THE
          AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1). ......................... 13

          1.   The Rule 12(b)(1) Standard. ...................................................... 13

          2.   Plaintiff's Claims Should be Dismissed Because the Rooker-Feldman Doctrine
               Applies and Bars Federal Court Jurisdiction. ..................................... 14

          3.   Plaintiff's Claims Should be Dismissed Because the Younger Doctrine Requires this
               Court to Abstain from Exercising Jurisdiction. ................................... 16

          4.   Plaintiff's § 1983 Claims Should be Dismissed Because Principles of Comity
               Require this Court to Abstain from Exercising Jurisdiction.......................... 19

     B.   ALL COUNTS OF THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR
          FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6). ................... 20

          1.   Res Judicata Bars All of Plaintiff's Claims. ...................................... 21

          2.   Plaintiff's § 1983 Claims (Counts I and VII) Fail to State a Claim................. 23

          3.   Plaintiff's RICO Claims (Counts II—VI) Fail as A Matter of Law and Should Be
               Dismissed............................................................................... 25

               a.   Plaintiff Cannot Maintain a RICO Action Against a Municipal Corporation. ..... 25

               b.   Plaintiff Cannot State an Actionable RICO Claim. ............................... 26

                    i.    The City's Enforcement Efforts Are Not Extortion.......................... 27

                    ii.   The City's Enforcement Efforts Are Not Witness Tampering. ................ 28

                    iii.  The City's Enforcement Efforts Have Not Impeded the Administration of
                          Justice.29

                    iv.   Plaintiff Has Failed to State a Claim of Mail or Wire Fraud. ................ 29

          4.   Plaintiff's State Law Tort Claims Fail as A Matter of Law Because the City Has
               Governmental Immunity and The City Defendants Have Official Immunity. ........ 31

          5.   Plaintiff's Abuse of Process Claim (Count VIII) Fails to State A Claim Upon Which
               Relief Can Be Granted. ............................................................... 33

6.    Plaintiff's Fraud Claim (Count IX) and Negligent Misrepresentation Claim (Count X) Fail to State A Claim Upon Which Relief Can Be Granted. ........................................ 35

7.    Plaintiff's Intentional Infliction of Emotional Distress Claim (Count XI) Fails to State A Claim Upon Which Relief Can Be Granted. ........................................................ 36

8.    Plaintiff's Civil Conspiracy Claim (Count XII) Fails to State A Claim Upon Which Relief Can Be Granted. ....................................................................................................... 37

C.    COUNT V (MAIL/WIRE FRAUD) AND IX (FRAUD) SHOULD BE DISMISSED PURSUANT TO RULE 9(B). ............................................................................................ 37

IV.    CONCLUSION ............................................................................................................... 38

## I.       INTRODUCTION

In this case, Plaintiff attempts to conjure an unlawful conspiracy against him from the City's legally valid and completely ordinary efforts to collect and enforce a judgment, a judgment that Plaintiff has managed to evade for eleven years.  Plaintiff admits that he failed to pay business privilege and wage taxes when he operated a law firm in Philadelphia during the 1990's and 2000's.  Plaintiff also admits that he still has not paid the City any of the taxes, interest, and penalties that he owes.  It is a matter of law that the City may take a tax delinquency such as Plaintiff's to judgment and thereafter may attempt to enforce the judgment using any of the various methods set forth in the Pennsylvania and local Rules of Civil Procedure.  It is a matter of law that the City may take up to twenty years to enforce a judgment.

Plaintiff makes much of the timing of the City's enforcement efforts in the Philadelphia Court of Common Pleas.  Incredibly, Plaintiff alleges that the City's judgment enforcement efforts that post-date Plaintiff's initiation of this federal lawsuit are a reaction to being sued, rather than a continuation of the City's ongoing collection and enforcement efforts.  The timing is entirely of Plaintiff's own making.  *Plaintiff* failed to pay taxes and file tax returns.  *Plaintiff* failed to satisfy the judgment against him (or even a portion of it) for eleven years.  *Plaintiff* rejected the City's generous offers to settle and resisted the City's efforts to obtain discovery in aid of execution of the judgment.  *Plaintiff* threatened and then filed a lawsuit in federal court. The City's collection, enforcement, and settlement efforts have proceeded in the normal course. Plaintiff, on the other hand, responded to his failed challenge to vacate the state court judgment and to the City's recent judgment enforcement efforts by threatening to sue the City in federal court.  Plaintiff then followed through when his threat did not produce the desired result.

It must be stated that the allegations contained in the Amended Complaint are not only lacking in merit but also frivolous.  The well-pled allegations in the Amended Complaint can

4

only establish two things:  (1) The City has attempted to collect and enforce a judgment against Plaintiff within the statutorily-prescribed time; and (2) the City needs revenue to fund initiatives that its elected officials have determined to be important to the City's residents.  That is the whole purpose of taxes, such as the ones which Plaintiff failed to pay.  To allege violations of RICO, Section 1983, and state tort law based upon these facts, as Plaintiff does, runs afoul of Rule 11 and the ethical rules governing the conduct of lawyers.  The issue before the Court at this time, however, is whether the Court has subject-matter jurisdiction over this case and whether the Amended Complaint states a claim upon which relief can be granted.  The answer to both of these questions is no.

This Court lacks subject-matter jurisdiction over this case, which seeks to collaterally attack the state-court judgment and to interfere in the parallel state court proceedings.  The *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and the principles of comity that underpin those doctrines require this Court to dismiss this case for lack of jurisdiction.  Second, all of the twelve Counts in Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted:  (a) all Counts of the Amended Complaint are precluded; (b) Plaintiff's RICO claims are fatally flawed and fail as a matter of law, principally because such claims cannot be maintained against a municipal corporation; (c) Plaintiff's state law claims fail as a matter of law because the City and City Defendants have governmental immunity and because Plaintiff fails to allege facts sufficient to establish the essential elements of all of those claims; and (d) Plaintiff's fraud claim must be dismissed because he fails to plead with particularity.

For all of these reasons, which are numerous and overwhelming as to each and every Count, the Amended Complaint should be dismissed in its entirety with prejudice.  Plaintiff

should not be granted further leave to amend, because his claims fail as a matter of law and further amendment would be futile.

## II.     FACTS AND PROCEDURAL HISTORY

### A.     Plaintiff Fails to Pay Taxes and the City Obtains a Judgment.

From 1992 through 2004, Plaintiff operated a law firm in Philadelphia.  Am. Compl. ¶¶ 26-27.  During this time, Plaintiff failed to pay local business privilege and wage taxes and failed to file tax returns.  *Id.*; Aug. 27, 2019 Mem. Op. (Dkt. No. 15) at n.3.  Because Plaintiff's delinquency continued over many years, statutory interest, penalties, and fines accrued.  On March 11, 2008, the City filed a Complaint (the "Tax Complaint") alleging unpaid business privilege and wage taxes, along with accrued interest and penalties.  *Id.* at ¶ 26.  The Tax Complaint alleged four Counts for unpaid taxes, interest, penalties, and fines against Plaintiff and his former law firm.  *See* Aug. 27, 2019 Mem. Op. (Dkt. No. 15) at n.3.  The combined unpaid tax principal alleged in the Tax Complaint was $85,985.82.  *See id.*

Plaintiff and his former law firm did not contest the Tax Complaint, and on June 3, 2008, a default judgment was entered against them in the amount of $310,586.53 (the "Judgment"), based upon the unpaid taxes, along with the statutory interest, fees, and penalties that had accrued prior to entry of the Judgment.  *Id.* at ¶ 27; Ex. A, Phila. CCP Dkt. p.7.  Following entry of the Judgment, only statutory post-judgment interest in the amount of 6% accrued on the Judgment.  *See* 42 Pa.C.S. § 8101.

### B.     The City Attempts to Execute Upon the Judgment, Plaintiff Fails to Satisfy the Judgment, and the City Revives the Judgment.

On September 25, 2008, less than four months after the Judgment was entered, the City attempted to enforce it, filing praecipes for writs of attachment against two banks.  *See* Am. Compl. ¶ 28, Ex A at p.8.  On October 9, 2008, the writs of attachments were served on the two

banks.  *See id.*  The writs of attachments against the two banks did not result in successful

execution of the Judgment, and on October 22, 2019 and November 4, 2008, the writs of

attachment against the two banks were discontinued and dissolved.  *See* Am. Compl. ¶¶ 30, 131,

135 (alleging that in 2008, the Judgment was "uncollectable" and therefore the City's

enforcement efforts at that time were "futile").  For years thereafter, Plaintiff failed to satisfy the

Judgment, and did not pay even a penny of the amount that he owed the City in unpaid taxes and

statutory penalties, interest, and fines.[2]

While its 2008 attempts to execute on the Judgment were futile (*see* Am. Compl. ¶ 135),

the City did not "abandon" the Judgment.  Instead, the City took proactive steps to ensure that

the Judgment remained enforceable.  In June of 2013, the City filed a "suggestion of non-

payment," which revived the Judgment and stated that the "claim [in the amount of $310,586.53]

is still due and owing [and] . . . that the owner/owners is/are still in default for nonpayment

thereof."  Ex. A, Phila. CCP Dkt. at p.9; *see also* Pa. R.C.P. 3101.1(a)(1) ("Execution may issue

within five years after entry of the judgment sought to be eforced or any judgment of revival or

agreement to revive . . .").

### C.    The City Attempts to Negotiate with Plaintiff, Plaintiff Attempts to Vacate the Judgment, and Plaintiff Threatens Legal Action Against the City.

On March 29, 2017, Defendant Christopher W. Dean, Esquire ("Mr. Dean") entered his

appearance on behalf of the City in the state court proceedings.  *See* Ex. A at p.9.  According to

Plaintiff's Amended Complaint, from June to September 2017, Plaintiff and Mr. Dean

exchanged emails "in which Dean demanded and/or sought to recover/collect the June 2008

judgment and to obtain documents and other information related thereto."  Am. Compl. ¶¶ 65-66.

---

[2] The Amended Complaint contains no allegations as to whether Plaintiff received bills or past due notices from the City or collection agents after the Judgment was entered in 2008.

During one of these exchanges, Plaintiff informed Mr. Dean that his former law firm had brought "a protracted civil rights case against the City which included 2 trips to the Third Circuit, and which necessarily resulted in thousands of hours ultimately being chargeable to the City."  Am. Compl. ¶ 66 n.3.

On July 16, 2017, Plaintiff filed a Motion for Judgment of Non Pros or in the Alternative, to Enjoin Enforcement of the Judgment, arguing that the City had failed to "proceed with reasonable promptitude" in enforcing the Judgment.  *See* Ex. A at pp.9-10.  On August 23, 2017, the Philadelphia Court of Common Pleas issued an order denying Plaintiff's motion.  *See* Am. Compl. ¶ 72; Ex. A at p.10.  On August 31, 2017, Plaintiff filed a Notice of Appeal.  Ex. A at p.10.  The Common Pleas Court issued its Opinion (the "Common Pleas Opinion") on October 24, 2017.  *See* Am. Compl. ¶ 73; Ex. A at p.14.  The Common Pleas Opinion, attached to this Motion to Dismiss as Exhibit B, explained that Plaintiff was not entitled to judgment of *non pros* or an order enjoining enforcement proceedings because the City "expeditiously and diligently litigated their case to a final judgment and disposition" and because the City "has a statutory right to execute upon its judgment within 20 years of its entry, or until June 2028" pursuant to 42 Pa.C.S. § 5529(a).  Ex. B at p.3.  Plaintiff pursued his appeal to the Pennsylvania Commonwealth Court.  *See* Am. Compl. ¶ 74.

While Plaintiff's challenge to the Judgment was pending before the Common Pleas Court and Commonwealth Court, the City "treated the June 2008 judgment as a collection matter."  Am. Compl. ¶ 76.  However, during this time the City again took proactive steps to preserve its right to enforce the Judgment through execution, levy, or attachment.  In May of 2018, the City filed a second "suggestion of non-payment," which again revived the Judgment and stated that

8

the "claim [in the amount of $310,586.53] is still due and owing [and] . . . that the owner/owners is/are still in default for nonpayment thereof." Ex. A at p.13.[3]

On April 4, 2019, the Pennsylvania Commonwealth Court affirmed the Common Pleas Opinion, stating "we conclude that the appellate issues have been ably resolved in the thorough and well-reasoned opinion of Judge Daniel J. Anders, and affirm on the basis of his opinion." *See* Ex. C, Commonwealth Court Opinion at p.8. The following day, on April 5, 2019, attorney Drew Salaman entered his appearance on behalf of the City. *See* Ex. A at p.13.

On April 9, 2019, Plaintiff sent an email to the Chief Deputy City Solicitor of the Appeals Unit alleging that the City was improperly using interest and penalties "as a revenue-raising device." *See* Am. Compl. ¶ 83. On or around April 17, 2019, Salaman informed Plaintiff that "the City was presently seeking/demanding a total of $276,400.93." Am. Compl. ¶ 87.

On April 23, 2019, Plaintiff sent an email to Defendant Kelly Diffily, Senior Attorney in the Appeals Unit of the City Solicitor's Office, and to Attorney Salaman, in which he threatened to file an attached draft complaint seeking "both legal and injunctive relief in connection with the City's tax and collection policy and practices." Am. Compl. ¶ 88. Attorney Salaman withdrew his appearance the following day. Am. Compl. ¶ 88 n.8. On April 29, 2019, Defendant Diana Cortes, Chair of Litigation of the City Solicitor's Office, responded to Plaintiff's threat to file a civil action, stating that "we regard your draft filing as baseless, frivolous, and unreasonable" and "[s]hould you continue with your plan to file such an action, the City will vigorously contest

---

[3] Both the 2013 and 2018 suggestions of non-payment directed the Prothonotary of the Philadelphia Court of Common Pleas to "enter this suggestion and averment on the municipal lien or the proper docket of the claim, and also to index it upon the judgment index and on the locality index of the court, for the purpose of continuing the lien of the claim pursuant to 53 P.S. 7183." Ex. A at pp.8, 13.

it and seek sanctions from the federal court." Am. Compl. ¶ 89.[4]  On April 30, 2019, Defendant

Deputy City Solicitor Brian Cullin entered his appearance.  *See* Ex. A at p.13.  During May and

June 2019, Defendant Cullin extended settlement offers to Plaintiff on behalf of the City.  Am.

Compl. ¶¶ 92-93.  According to the Amended Complaint, Defendant Cullin first offered

$175,000, then $185,000, to settle the Judgment enforcement matter.  *Id.* at ¶ 93.  These offers

represented only 56% and 60% of the 2008 Judgment amount, respectively.  In his June 14, 2019

email conveying the $185,000 offer, Defendant Cullin informed Plaintiff that if he continued to

refuse the City's reasonable settlement offers, the City would be forced to move forward with

execution of the Judgment and related discovery in aid of execution.  Am. Compl. ¶ 93.  Plaintiff

did not accept any of the City's settlement offers.

> ### D.    The City Attempts to Enforce the Judgment Again and Plaintiff Sues the City in Federal Court.

Beginning in May of 2019 and continuing through the present, after previous

enforcement, collection, and settlement efforts had failed, and after the Pennsylvania

Commonwealth Court upheld the Judgment and the City's enforcement efforts as valid, the City

attempted a second round of enforcement efforts.  The City began by seeking discovery in aid of

execution, including interrogatories, depositions, requests for production of documents, and

subpoenas to third parties.  Plaintiff resisted all of these discovery efforts.  *See* Ex. A, Phila. CCP

Dkt. pp. 13-18 (Entries of Appearance and Motions to Compel).

---

[4] Rule 11(b) bars attorneys from submitting pleadings or motions to the court that lack legal basis or factual support. Rule 11(c) permits an opposing party to move for sanctions based on violations of Rule 11(b).  Ms. Cortes' email reflected the City's position that Plaintiff's allegations are meritless, baseless, and frivolous.

Plaintiff filed the Complaint in this Court on June 20, 2019.  The Complaint alleged ten Counts, under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (Counts I--V) and under Pennsylvania common law (Counts VI--X).

On July 1, 2019, Plaintiff filed a petition for allowance of appeal to the Pennsylvania Supreme Court in the state court proceedings.  *See* Ex. A at p.16.  On July 8, 2019, the Common Pleas Court denied Plaintiff's Motion for a Protective Order and to Stay enforcement proceedings.  *See id.*  On July 11, 2019, the City filed a Motion to Compel discovery in aid of execution directed to Plaintiff.  *See id.* at p.20.  Plaintiff filed an Answer in Opposition to the City's Motion to Compel on July 31, 2019.  *See id.*

On August 13, 2019, Plaintiff served the Complaint on the City.  On the same day, Plaintiff filed and served a Motion for Preliminary Injunction.

On August 15, 2019, after Plaintiff had resisted the City's discovery in aid of execution for nearly five months and rejected the City's reasonable settlement offers, the City filed praecipes to issue writs of attachment upon seven banks.  *See* Ex. A at pp.21-23.  The writs were subsequently served on the banks by the Philadelphia Sheriff.  *See* Ex. A at pp.21-22.  In accordance with the Pennsylvania Rules of Civil Procedure, the City did not serve the writs on Plaintiff.  *See* Pa.R.Civ.P. 3140(a) ("Upon being served with the writ, the garnishee shall promptly forward a copy to the defendant.").[5]  The Pennsylvania Rules of Civil Procedure provide a variety of opportunities for defendants to object to garnishment and execution proceedings, which continue to be available after service has been effectuated.  *See, e.g.*,

---

[5] Although service on a plaintiff is not required under the rules, Plaintiff is an attorney of record for himself and his law firm in the state court proceedings.  *See* Ex. A at 4.  Accordingly, he would receive electronic notification from the Common Pleas Court of any filings, including the praecipes to issue writs of attachment.

Pa.R.Civ.P. 3111.1 (exemptions to levy and attachment); Pa.R.C.P. 3121 (stays of execution);

Pa.R.C.P. 3142 (Preliminary Objections to Interrogatories in Attachment).

In response to the City's filing of the writs, Plaintiff filed a Motion for a Temporary

Restraining Order in this case on August 19, 2019.  The parties presented oral argument at a

hearing the following day, and submitted briefing.  *See* Dkt. Nos. 5-12.  On August 27, 2019, the

Court denied both Plaintiff's Motion for Preliminary Injunction and Motion for Temporary

Restraining Order.  *See* Dkt. No. 16.

On September 3, 2019, the City and City Defendants filed a Motion to Dismiss the

Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defendants Dean and Linebarger

filed a Motion to Dismiss on the same day.  Later the same day, Plaintiff filed the Amended

Complaint.  The Amended Complaint contains new baseless and conclusory allegations

regarding the City's purpose in attempting to collect and enforce the Judgment.  *See* Am. Compl.

¶¶ 32-64, 77-82, 92-127.  The Amended Complaint alleges two new Counts under 42 U.S.C. §

1983 (Counts I and VII).  The other ten Counts of the Amended Complaint are based upon RICO

(Counts II—VI) and Pennsylvania common law (Counts VIII—XII).

This is not the first time that Plaintiff has asserted frivolous claims in federal court

against adversaries from a related state court proceeding.  In *Jackson v. Rohm & Haas Co*,

Plaintiff (on behalf of his client) "filed suit against Rohm and Haas and its attorneys in federal

court, asserting violations of [RICO, 42 U.S.C. § 1985] and related common law claims based on

the defendants' alleged misconduct during the state court proceedings."  366 Fed. Appx. 342,

344-45 (3d Cir. 2010).  Plaintiff initiated the federal lawsuit "shortly after the Pennsylvania

Superior Court affirmed the trial court's decision" against Plaintiff's client.  *Id.*  The federal

district court found that Plaintiff had violated Rule 11 by filing a pleading containing warrantless

and frivolous claims and sanctioned Plaintiff in the amount of $81,710.99.  *Id.* at 347.  The Third

Circuit affirmed the trial court's ruling on sanctions.  *Id.*

As of the date of this Motion, the state-court judgment enforcement proceedings are

ongoing and Plaintiff's Petition for Allowance of Appeal to the Pennsylvania Supreme Court

remains pending.

## III.   ARGUMENT

### A.   THE ROOKER-FELDMAN DOCTRINE, YOUNGER ABSTENTION DOCTRINE, AND PRINCIPLES OF COMITY REQUIRE DISMISSAL OF ALL COUNTS OF THE AMENDED COMPLAINT PURSUANT TO RULE 12(B)(1).

#### 1.   The Rule 12(b)(1) Standard.

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter

jurisdiction to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class

Action*, 678 F.3d 235, 243 (3d Cir. 2012).  It is well-settled that the burden of establishing the

federal court's jurisdiction always lies with the plaintiff.  *Save Ardmore Coalition v. Lower

Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005).  It is "presume[d] that federal courts

lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary,* 501

U.S. 312, 316 (1991).

"A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may present

either a facial or a factual attack."  *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 342 (E.D.

Pa. 2019) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  "A facial attack

concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a

plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (citing *CNA v.

United States*, 535 F.3d 132, 139 (3d Cir. 2008)) (quotations omitted).  When considering a

factual challenge to its jurisdiction, "the court may consider evidence outside the pleadings" and

13

"is free to weigh the evidence and satisfy itself of its power to hear the case." *Id.* (internal citations and quotations omitted).  Further, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (internal citations and quotations omitted).

The *Rooker-Feldman* doctrine, *Younger* abstention doctrine, and principles of comity present factual jurisdictional challenges that are governed by Rule 12(b)(1).  *See, e.g.*, *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 343 (E.D. Pa. 2019); *Nellom v. Del. Cnty. Domestic Relations Section*, 145 F. Supp. 3d 470, 477 (E.D. Pa. 2015).

> ### 2.    Plaintiff's Claims Should be Dismissed Because the Rooker-Feldman Doctrine Applies and Bars Federal Court Jurisdiction.

The *Rooker-Feldman* doctrine, while narrow, establishes the circumstances in which the Supreme Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a federal district court from exercising subject-matter jurisdiction.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005).  The doctrine has four requirements: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil*, 544 U.S. at 284).  While all four requirements must be met, the Third Circuit has emphasized that the "second and fourth requirements are the key to determining whether a federal suit presents an independent non-barred claim."  *Id.* at 166.

Here, all four requirements are met.  First, Plaintiff is clearly a state-court loser—he did not contest an outstanding tax claim and a default judgment was entered against him for

$310,586.53 on June 3, 2008.  Plaintiff also lost attempts to vacate the Judgment before the Court of Common Pleas on October 24, 2017, and the Commonwealth Court on April 4, 2019. Both courts affirmed that the City's execution efforts were legal under local and state law.

Second, Plaintiff's alleged injury is that the City's efforts to collect and/or enforce the Judgment were undertaken with two illegitimate purposes – "first to improperly fund City programs/initiatives, and second as a weapon to trample plaintiff's exercise of his federal rights and remedies."  Am. Compl. ¶ 137.  Determining causation of alleged injuries related to a state-court proceeding can become complicated where there are allegations that the judgment was procured by improper means.  *See Great W. Mining*, 615 F.3d at 167-68.  Here, however, Plaintiff does not allege the judgement itself was procured by fraud, but that the City intentionally misled him to believe it had "abandoned" its claim *after* the Judgment had been entered.  *See* Am. Compl. ¶ 155 ("[T]he City intentionally mislead plaintiff into believing the City, *following the initial execution effort*, considered the matter resolved, terminated, and/or abandoned.") (emphasis added).  Because all of his claims are based on the City's efforts to collect on or otherwise execute the Judgment, it is the Judgment that is the ultimate source of Plaintiff's alleged injury and the second requirement is met.

Third, the Judgment and state-court decisions were all clearly reached prior to Plaintiff's filing of the instant action.

Finally, the success of Plaintiff's claims depend on a finding that the City's second execution effort was unlawful.  It is hard to imagine this Court coming to such a conclusion without effectively nullifying the Court of Common Pleas' and Commonwealth Court's determinations that the enforcement action *was* conducted lawfully.  *See Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1264 (11th Cir. 2012) ("It is abundantly clear . . . that the claim

would succeed 'only to the extent that the state court wrongly decided the issues.'") (citation omitted). Therefore, Plaintiff is in reality seeking appellate review from a state-court decision, which is barred by the *Rooker-Feldman* doctrine, and the Amended Complaint should be dismissed under Rule 12(b)(1) with prejudice.

> **3.**   **Plaintiff's Claims Should be Dismissed Because the Younger Doctrine Requires this Court to Abstain from Exercising Jurisdiction.**

The *Younger* abstention doctrine requires a federal district court to refrain from exercising jurisdiction when pending state proceedings provide an adequate forum for all relevant issues presented in the federal case. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *Younger v. Harris*, 401 U.S. 37 (1971). Principles of comity and federalism require this result. *See Middlesex*, 457 U.S. at 436. Further, abstention prevents "litigants . . . [from] tak[ing] multiple bites from the same apple" by pursuing a claim in more than one forum. *Bryant v. Sylvester*, 57 F.3d 308, 312 (3d Cir. 1995), *vacated on other grounds by* 516 U.S. 1105 (1996).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the United States Supreme Court articulated the categories of cases to which lower courts should apply the *Younger* doctrine. These include "civil enforcement proceedings" and "pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. 69, 77-78 (2013). Here, Plaintiff has brought a direct challenge to parallel state court judgment enforcement proceedings and is seeking both money damages and injunctive relief. *See, e.g.*, Am. Compl. ¶ 143. This case fits squarely within the categories for civil enforcement proceedings and civil proceedings involving orders that further state courts' ability to perform their judicial functions that are articulated in *Sprint*. Therefore, this Court should conduct a *Younger* analysis to determine whether it should abstain in this case.

*Younger* abstention is appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Middlesex*, 457 U.S. at 432.  Here, all three prongs are easily established.

First, the Court of Common Pleas case is an ongoing state court judicial proceeding.  At the Court of Common Pleas level, the City continues to attempt to enforce the Judgment by serving discovery in aid of execution on Plaintiff and other relevant parties and by execution proceedings.  Discovery, motion practice, and execution proceedings are ongoing in the state court proceedings.  At the state court appellate level, Plaintiff has filed a petition for allowance of appeal to the Pennsylvania Supreme Court challenging the Pennsylvania Commonwealth Court Opinion upholding the Judgment.  Plaintiff's petition for allowance of appeal is pending, and to that extent Plaintiff's challenge to the Judgment (on the basis of *non pros* and laches) is still ongoing.

Second, the state court proceedings involve important state interests.  The enforcement of state court judgments is inarguably an important state interest.  In addition, states and municipalities have a strong interest in reliable collection of taxes and in deterring tax delinquency through accrual of interest and penalties.  The pending state court judgment enforcement proceedings implicate both of these important state interests.

Third, the state court proceedings afford Plaintiff an adequate opportunity to raise the claims that he has asserted in this federal court action.  The essence of Plaintiff's claims in this case is that the City delayed in enforcing the Judgment for the improper purpose of raising revenue and continued enforcement efforts in response to the instant action.  Plaintiff has had,

17

and still has, opportunities to raise these claims in the state court proceedings.

Plaintiff had an opportunity to raise his claims that the City delayed obtaining a judgment against Plaintiff for an improper purpose in violation of federal statutory law and state common law in a responsive pleading to the City's Tax Complaint in 2008. Instead, Plaintiff did not even attempt to raise these claims in the state court proceeding. In fact, he did not file any response to the City's Tax Complaint. This alone satisfies the "adequate opportunity" prong of the *Younger* analysis. *See Middlesex*, 457 U.S. at 435 (holding that the plaintiff had an adequate opportunity to raise his federal constitutional claims in a state court attorney disciplinary proceeding when the plaintiff failed to respond to the complaint filed against him by the local Ethics Committee).

In addition, Plaintiff filed a Motion for Judgment of Non Pros, or in the Alternative, to Enjoin Enforcement of the Judgment in 2017. Plaintiff's Motion challenged the City's timeliness in executing on the 2008 Judgment. *See* Ex. B. Again, this presented an opportunity for Plaintiff to raise his federal claims that the City's supposed delay in enforcing the Judgment was for an improper purpose and violated RICO. Plaintiff did not avail himself of this opportunity.

Finally, Plaintiff still has opportunities to raise his federal claims, including his newly added § 1983 claims, in the state court proceedings. Pennsylvania Rule of Civil Procedure 3121 provides for stays of execution, when, among other grounds, there is "a showing of exemption or immunity of property from execution." The rule provides that "[e]xecution may be stayed by the court as to all or any part of the property of the defendant upon its own motion or application of any party in interest showing (1) a defect in the writ, levy or service; or (2) ***any other legal or equitable ground therefor.***" Pa.R.C.P 3121 (emphasis added). This very broad language – "any other legal or equitable ground" – permits Plaintiff to raise the claims that he has asserted in this

case in a Motion to Stay pursuant to Rule 3121 in the state court proceedings.

Accordingly, because all three prongs of *Younger* are satisfied, principles of comity

dictate that this Court should abstain from deciding this case.  As a result, the Amended

Complaint should be dismissed with prejudice pursuant to Rule 12(b)(1).

### 4.    Plaintiff's § 1983 Claims Should be Dismissed Because Principles of Comity Require this Court to Abstain from Exercising Jurisdiction.

In *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981), the

Supreme Court held:

> [T]axpayers are barred by the principle of comity from asserting § 1983 actions
> against the validity of state tax systems in federal courts.  Such taxpayers must
> seek protection of their federal rights by state remedies provided of course that
> those remedies are plain, adequate, and complete, and may ultimately seek review
> of the state decisions in this Court.

The Court reiterated in *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582,

587 (1995) that "because of principles of comity and federalism, Congress never authorized

federal courts to entertain damages actions under § 1983 against state taxes when state law

furnishes an adequate legal remedy."  The Court has since clarified that *Fair Assessment* defined

the scope of the § 1983 cause of action and that, although its abstention holding was narrow, "a

federal court should not entertain a U.S.C. § 1983 suit for damages based on the enforcement of

a state tax scheme."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996).

Here, Plaintiff has amended his complaint to include claims under § 1983 for damages

and injunctive relief.  These claims are based on allegations that the City's efforts to collect and

enforce a tax judgment violated his First and Fourteenth Amendment rights and constituted

retaliation under the statute.  These are precisely the types of claims the Supreme Court meant to

prevent District Courts from considering in *Fair Assessment.  See* 454 U.S. at 115-16

("[D]amages actions, no less than actions for an injunction, would hale state officers into federal

court every time a taxpayer alleged the requisite elements of a § 1983 claim. We consider such interference to be contrary to '[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts.'") (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932). Moreover, states are provided wide latitude in satisfying requirements of due process in the field of taxation as long as some remedy is available. *See Nat'l Private Truck Council*, 515 U.S. at 587. There is no allegation that Plaintiff lacks an adequate remedy in state court, and nor could there be. As discussed above, Plaintiff has had, and still has, the opportunity to raise his federal claims in state court.

The Middle District considered a similar challenge to the one raised here in *UPMC v. City of Pittsburgh*, 2013 WL 5777157, at *7 (W.D. Pa. Oct. 25, 2013). There, UPMC's essential complaint was that the city defendants were abusing the tax collection process, in violation §1983, by filing a lawsuit and engaging in a negative public relations campaign instead of following administrative procedures to collect allegedly past-due taxes. *Id.* at *8. The court found that principles of comity, as dictated in *Fair Assessment*, required it to abstain from adjudicating UPMC's "constitutional challenge based on how its own tax liability is being affected by the way in which a taxing authority is applying and enforcing the tax laws." *Id.* at *7. Here, the principles of comity demand the same result and Plaintiff's § 1983 claims (Counts I and VII) should be dismissed with prejudice under Rule 12(b)(1).

### B.  ALL COUNTS OF THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6).

The applicable standard for a Rule 12(b)(6) motion is well-settled. Under this Rule, the Court must dismiss an action on motion made before a responsive pleading is filed, when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

20

"[A] plaintiff's obligation to provide the 'grounds' of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqball*, 556 U.S. 662, 678-79 (2009) (stating that a Complaint must contain something more than "naked assertion[s]" devoid of "further factual enhancement."). "The basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### 1.    Res Judicata Bars All of Plaintiff's Claims.

Even if *Rooker-Feldman*, *Younger*, or the principles of comity did not apply, Plaintiff's claims are precluded under res judicata.  In determining the preclusive effect of a state-court judgment, federal courts must apply the law of the state from which the judgment is taken.  28 U.S.C. §1738; *Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("Congress has directed federal courts to look principally to state law in deciding what effect to give state-court judgments.").  In Pennsylvania, only prior determinations on the merits may preclude subsequent litigation. *McCarter v. Mitcham*, 883 F.2d 196, 199 (3d Cir. 1989) (citing *Ross v. Bowlby*, 509 A.2d 332 (Pa. Super 1986)).  Such determinations include default judgments.  *McGill v. Southwark Realty Co.*, 828 A.2d 430, 435 (Pa. Commw. Ct. 2003).  "For the doctrine of res judicata to prevail, Pennsylvania courts require that the two actions share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued.  *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006).  The doctrine "applies not only to claims actually litigated, but also

21

to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Id.* (quoting *Balent v. City of Wilkes–Barre*, 669 A.2d 309, 313 (Pa. 1995).

Here, all four conditions are present. First, the 2008 judgment, the 2017 and 2019 state-court decisions, and the current action all seek recovery of, or relief from, the taxes, penalties, and interest owed by Plaintiff to the City.

Second, the state-court decisions and instant federal and state-law claims all share the same cause of action. As the court in *Turner* explained:

> [R]es judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims. . . . [I]n determining whether a single cause of action is present one may consider the identity of the acts complained of, the demand for recovery, the identity of witnesses, documents, and facts alleged. A lack of identity of these facets would, of course, support the conclusion that there is no identity of cause of action.

*Id.* at 549 (quoting *McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993)) (internal citations omitted). Here, it is the same set of events that have given rise to Plaintiff's state-court and federal actions: the City's renewed efforts, beginning in 2017, to execute or otherwise collect the Judgment. While Plaintiff alleges new § 1983 claims in the Amended Complaint, those claims are based on a "repurposing" or "transformation" of the same underlying renewed enforcement effort. *See* Am. Compl. ¶ 136 ("[T]he City 're-purposed' the June 2008 judgment . . . as a weapon to trample plaintiff's exercise of his federal rights and remedies."); ¶ 150 ("The 'dual purposes" or uses of the June 2008 judgment as described herein are consistent with, and a natural outgrowth of, the four-tiered tax collection/enforcement scheme."). Plaintiff's use of new legal theories is unavailing. *See Turner*, 449 F.3d at 549 ("Pennsylvania courts have held that

22

the mere advancement of a different legal theory does not necessarily give rise to a different cause of action.") (citing *McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993)). Otherwise, the third and fourth conditions are clearly met as both the City and Plaintiff have been parties to every action.

Therefore, Plaintiff's federal and state-law claims, Counts I—XII, are precluded under res judicata and should be dismissed.

### 2.      Plaintiff's § 1983 Claims (Counts I and VII) Fail to State a Claim.

As explained in Section III(A)(4), principles of federalism and comity require this Court to abstain from exercising subject-matter jurisdiction over this state tax collection and enforcement matter.  However, even if abstention were not required here, Plaintiff fails to state a claim upon which relief can be granted.

First, Plaintiff fails to plead facts sufficient to establish municipal liability. Section 1983 does not permit the City to be held vicariously liable for the acts of its employees.  *See Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).  Instead, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom."  *See id.* (citations and quotations omitted).  A policy occurs when a decision maker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law."  *See id.* (citations and quotations omitted).  A complaint that includes no factual allegations regarding a municipal policy or custom cannot survive a motion to dismiss.  *See, e.g., Breslin v. City & County of Phila.*, 92 F.R.D. 764, 765 (E.D. Pa. 1981).  Here, Plaintiff makes no plausible factual allegations regarding a municipal policy or custom.  Instead, Plaintiff has limited his Complaint to averments regarding the City's enforcement actions against him

*personally* and a bare, speculative allegation, contradicted by the record of the state court proceedings, that the City "unlawfully monetize[s] abandoned tax claims." *See, e.g.*, Am. Compl. ¶ 142.

Second, Plaintiff fails to plead facts sufficient to establish supervisory liability as to Defendants Kenney, Breslin, Pratt, O'Connell and Cortes. Plaintiff alleges generally that these Defendants were either policymaking officials or supervisors. *See* Am. Compl. ¶¶ 15-19. However, "[i]t is well-settled that supervisory liability cannot be predicated solely on a *respondeat superior* theory." *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013). There are two routes to establishing supervisory liability. First, a plaintiff may "aver with sufficient factual support that with deliberate indifference to the consequences, [the supervisor] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (emphasis added). Second, a plaintiff may "plead facts that plausibly suggest that the supervisors participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Id.* Plaintiff has done neither. Put simply, Plaintiff has made no factual allegations that any of the "policymaker" or "supervisor" City Defendants created a policy or directed others to violate Plaintiff's constitutional rights. The undisputed record of the state court proceedings demonstrates that the City's enforcement efforts were lawful and appropriate.

Third, all City Defendants have qualified immunity because Plaintiff did not suffer a violation of any "clearly established right." "The doctrine of qualified immunity shields government officials from money damages unless a plaintiff pleads facts showing (1) that the

24

official violated a statutory or constitutional right, and (2) that the right was 'clearly established'

at the time of the challenged conduct."  *Noonan v. Kane*, 305 F. Supp. 3d 587, 596–97 (E.D. Pa.

2018).  Here, none of the City Defendants could have possibly anticipated that their efforts to

enforce a court a judgment that was upheld by both the Philadelphia Court of Common Pleas and

the Pennsylvania Commonwealth within the timeframe permitted under state law and using

methods permitted under the Pennsylvania Rules of Civil Procedure, would violate a "clearly

established right."

For all of these reasons, Counts I and VII should be dismissed.

3.     **Plaintiff's RICO Claims (Counts II—VI) Fail as A Matter of Law and Should Be Dismissed.**

In a desperate attempt to continue evading his tax obligation, Plaintiff has alleged that the

City's lawful attempts to execute the Judgment constitute a violation of the Racketeer Influenced

and Corrupt Organizations Act.  18 U.S.C. § 1961 *et seq.  See* Am. Compl. Counts II—VI.

Plaintiff's claims fail on the merits for two critical reasons.  First, civil RICO actions cannot be

brought against municipal corporations.  Second, even if Plaintiff's claim is not barred, he has

not stated any actionable civil RICO claims.

a.     Plaintiff Cannot Maintain a RICO Action Against a Municipal Corporation.

Plaintiff brings his RICO claim pursuant to § 1964(c), which provides a civil right of

action to "[a]ny person injured in his business or property by reason of a violation of section

1962" to seek treble damages and attorney's fees.  18 U.S.C. § 1964(c).  Plaintiff's RICO claim

fails as a matter of law, however, because such a claim cannot be brought against a municipal

corporation.  The Third Circuit explicitly held in *Genty v. Resolution Tr. Corp.*, 937 F.2d 899,

914 (3d Cir. 1991) "that a civil claim brought under section 1964(c) of the RICO Act, with its

mandatory award of treble damages which are punitive in character, cannot be maintained against a municipal corporation."  While Plaintiff has named Mayor James Kenney, Marcel S. Pratt, Esq., Frank Breslin, Diana P. Cortes, Esq., Marissa O'Connell, Esq., Brian R. Cullin, Esq., and Kelly Diffily, Esq. as Defendants, he has done so in their official capacity.  A suit brought against public officials in their official capacity is equivalent to a suit brought against the public entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  There is no dispute here that the City of Philadelphia is a municipal corporation.[6]  Therefore, Plaintiff has failed to make out any cognizable RICO claim and Counts II—VI of the Amended Complaint should be dismissed as to the City and City Defendants.

b.     Plaintiff Cannot State an Actionable RICO Claim.

Even if Plaintiff could maintain his RICO claim against the City, which he cannot, he has failed to meet the standing requirements of § 1964(c).  Standing under § 1964(c) requires a plaintiff to show "(1) that he was injured (2) by reason of a violation of § 1962." *See Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005).  In order to plead a violation of § 1962, "plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  Racketeering activity, as defined under § 1961(1), includes a variety of indictable acts under Title 18 of the United States Code.  Plaintiff alleges that the City's efforts to enforce the Judgment against him violated the following criminal statutes:  18 U.S.C. § 1951 (extortion), § 1512 (witness tampering), § 1503 (impeding administration of justice), § 1341 (mail fraud), and § 1343 (wire fraud).

---

[6] "Defendant, City of Philadelphia (hereinafter "City"), is a municipal corporation with a principal place of business in Philadelphia, Pennsylvania."  Am. Compl. ¶ 2.

The bearing of these criminal statutes on the City's normal and ordinary effort to collect a state-court judgment is difficult to divine.  This is in part due to the common-sense notion, memorialized in *Clark v. Court of Common Pleas of Cnty. of Chester*, 1992 WL 30551, at *4 (E.D. Pa. Feb. 13, 1992), that "[a] state judgment collection procedure does not provide a RICO injury."   Indeed, upon closer inspection, the application of these criminal statues to the facts alleged in the Amended Complaint makes clear that Plaintiff has not, and cannot, establish the racketeering activity necessary for a violation of § 1962.

i.  *The City's Enforcement Efforts Are Not Extortion.*

In Count II Plaintiff argues that the City's attempts to execute the Judgment constitute extortion in violation of 18 U.S.C. § 1951.  Section 1951(b)(2) defines the term "extortion" as "the obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951 (emphasis added).  Obtaining property "under color of official right" is understood to be the "rough equivalent of what we would now describe as taking a bribe."  *Ocasio v. United States*, 136 S. Ct. 1423, 1428 (2016) (quoting *Evans v. United States*, 504 U.S. 255, 260 (1992)) (internal quotation marks omitted) (citation omitted).

Plaintiff's arguments that the City's collection efforts became extortion because the recovery of tax delinquencies finances important public initiatives and because he filed a federal lawsuit before the City could execute the Judgment has no basis in logic or law.[7]  The notion that the City intentionally mislead Plaintiff, an experienced attorney, into believing it had "abandoned" the claim after its first unsuccessful execution attempt is similarly absurd.  The

---

[7] Not least of which because interest and penalties on the delinquent tax principal are set by ordinance and only accrued until the Judgment, which Plaintiff did not contest.  Phila. Code §§ 19-1504(3), 19-1509.  The City is entitled to post-judgment interest just as any other judgment creditor in Pennsylvania.  42 Pa.C.S. § 8101.

City, either through its employees or agents, is legally permitted to impose and collect business privilege and wage taxes as well as interest and penalties due on any unpaid taxes pursuant to its taxing authority under Phila. Code §§ 19-2600,19-1500, and 19-509, respectively.  Further, under the judgment collection authority granted by § 6-200 of the Phila. Home Rule Charter and Phila. Code § 19-3100, the City is permitted to collect/enforce state judgments like that ordered against Plaintiff in the manner it did.  Not one but two Pennsylvania courts have held the City's collection efforts against Plaintiff to have been lawful, timely, and otherwise in accordance with these statutes.  As the City Defendants' conduct was, at all times, pursuant to and in accordance with valid state laws, municipal ordinances and judicial decrees, Plaintiff's claim of racketeering activity predicated on a violation of 18 U.S.C. § 1951 must fail.

       *ii.  The City's Enforcement Efforts Are Not Witness Tampering.*

       Count III of the Amended Complaint alleges the City Defendants violated 18 U.S.C. § 1512(b)-(d), which makes it illegal to cause or induce someone, through a variety of ways, to withhold testimony from an official proceeding, otherwise impede an "official proceeding," or prevent someone from reporting the commission of a federal offense.  18 U.S.C. § 1515(a)(1) defines an "official proceeding," in relevant part, as a proceeding before a judge or court of the United States.

       This statute has no application to the facts alleged in the Amended Complaint.  The City's enforcement efforts are the natural extension of a lawful debt collection process, which began over a decade ago.  The Amended Complaint points to a variety of the City's efforts to collect the judgment, including "escalating claims and settlement demands," seeking information from Plaintiff's associates, and the filing of writs of attachment. Am. Compl. ¶ 159.  However, the conduct alleged in the Amended Complaint is all clearly a regular and proper extension of the

28

City's efforts to execute the Judgment, which began well before Plaintiff threatened any federal suit.  Indeed, the City had already sought writs of attachment in 2008 just after the Judgment was entered.   Plaintiff has not alleged any facts suggesting that the City's enforcement efforts have any plausible relationship to the present action and, therefore, has failed to state a violation of § 1512.

### iii. The City's Enforcement Efforts Have Not Impeded the Administration of Justice.

In Count IV, Plaintiff alleges violations of 18 U.S.C. § 1503(a).  The Supreme Court has characterized § 1503 as a catch-all provision that prohibits any action to impede administration of justice that is not prohibited by other, more specific provisions.  *United States v. Aguilar*, 515 U.S. 593, 599 (1995).  To constitute a violation of § 1503, the action must have been taken with an intent to influence judicial or grand jury proceedings, or in other words, have the "natural or probable effect" of interfering with the administration of justice.  *Id*.  Here, Plaintiff proffers nothing more than conclusory statements parroting the language of the statute.  He has not pled any facts indicating City Defendants undertook any action with the intent to influence a judicial proceeding.  The City Defendants' efforts to execute the Judgment, including demand letters and writs of attachment, are the normal and ordinary extension of the 2008 judgment against Plaintiff, the natural and probable effect of which is the recovery of lost tax revenue, not obstruction of justice.  Plaintiff, therefore, has failed to allege a violation of § 1503.

### iv. Plaintiff Has Failed to State a Claim of Mail or Wire Fraud.

Count V claims the City Defendants violated 18 U.S.C. § 1341 and § 1343, which prohibit mail and wire fraud, respectively.  Within the Third Circuit, these statutes are considered "identical, . . . 'except [the wire fraud statute] speaks of communications transmitted by wire,' i.e. telephone, radio, or television, and does not apply to intrastate communications."

29

*Bonavitacola Elec. Contractor, Inc. v. Boro Developer, Inc.*, 2002 WL 31388806, at *3 (E.D. Pa. Oct. 23, 2002) (citing *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994)).  "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)."  *Schmuck v. United States*, 489 U.S. 705, 721 (1989).

Similar to Plaintiff's state-law fraud claim, discussed *infra*, Plaintiff's mail and wire fraud claims fail as a matter of law because there is no allegation here of any representation that City Defendants made to the Plaintiff that the City had given up its efforts to collect and enforce the Judgment.  Plaintiff merely relies on a boilerplate assertion that the City "intentionally misled" him into believing it had abandoned its efforts after the initial execution attempt.  Am. Compl. ¶ 155.  Therefore, he has failed to state a violation of either § 1341 or § 1343.

Plaintiff's attempt to apply various criminal statutes to the City's enforcement efforts is unavailing.  As a result, he has failed to sufficiently allege any predicate acts of racketeering activity as required for a violation of § 1962 and, therefore, Counts II – V of the Amended Complaint should be dismissed for lack of RICO standing under the Act.

c.  <u>Plaintiff Cannot Maintain a Claim for Conspiracy Absent Racketeering Activity.</u>

Finally, Plaintiff alleges in Count VI that the City Defendants' conduct constituted a conspiracy in violation of 18 U.S.C. § 1962(d).  However, in failing to allege any predicate acts of racketeering activity, Plaintiff cannot make out a claim for RICO conspiracy under § 1962(d).  "[A] person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute."  *Beck v. Prupis*, 529 U.S. 494, 507 (2000).  Therefore, Plaintiff's claim under 18 U.S.C.

30

§ 1962(d) should be dismissed.

Based on the foregoing, Plaintiff is unable to assert his § 1964(c) claim against the City and City Defendants, and even if he could, has failed to show predicate acts of racketeering activity that are necessary to state an actionable claim for standing under the Act. Therefore, Counts II—VI of the Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

> ### 4.   Plaintiff's State Law Tort Claims Fail as A Matter of Law Because the City Has Governmental Immunity and The City Defendants Have Official Immunity.

The City and City Defendants are immune from damages in this case under the Pennsylvania Political Subdivisions Tort Claims Act (the "Tort Claims Act"). The Tort Claims Act, 42 Pa.C.S. § 8541, provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[8] The Code defines "local agency" to include "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. Accordingly, the City is a local agency immune from damages under the Tort Claims Act. In addition, the Tort Claims Act "extends to employees of local agencies the same immunities afforded to the agencies themselves." *E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 502 (E.D. Pa. 2019) (citing 42 Pa. Cons. Stat. § 8545); *see also* 42 Pa. Cons. Stat. § 8541; *Wnek v. City of Phila.*, 2007 WL 1410361, at *4 (E.D. Pa. May 10, 2007); *Pollarine v. Boyer*, 2005 WL 1806481, at *3 (E.D. Pa. July 29, 2005)). Accordingly,

---

[8] The Tort Claims Act allows recovery of damages against political subdivisions and their employees in eight specific categories of cases: 1) operation of a motor vehicle; (2) care, custody or control of personal property of others in the possession or control of the local agency; (3) care, custody or control of real property in the possession of the local agency; (4) care, custody or control of trees, traffic controls and street lighting, which create a dangerous condition; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody or control of animals.

the City Defendants, as employees or elected officials of the City, are also immune from damages under the Tort Claims Act.

The City's immunity under the Tort Claims Act extends to intentional torts such as the claims alleged at Counts VIII through XII of the Complaint.  *See Zernhelt v. Lehigh Cnty. Office of Children & Youth Servs.*, 659 A.2d 89, 90 (Pa. Commw. Ct. 1995) ("It is well established that [s]ubsection 8542(a)(2) of the Judicial Code, 42 Pa.C.S. § 8542(a)(2) declares that liability may be imposed on a local agency only for negligent acts which subsection 8542(a)(2) defines as excluding 'acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.'").  For this reason, the Tort Claims Act unambiguously bars Plaintiff from recovering against the City in this case.  *See id.*

The Tort Claims Act provides an exception to immunity for municipal corporation officials and employees' "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S. § 8542(a)(2).  However, bare assertions that municipal officials or employees acted intentionally, wrongfully, maliciously, fraudulently, or deceitfully are insufficient to establish the wrongful intent necessary to overcome the governmental immunity conferred by the Tort Claims Act.  *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1026 (Pa. Commw. Ct. 2014) (citing *Geary v. United States Steel Corp.*, 319 A.2d 174, 178 (1974).  Here, Plaintiff's pleadings fall far short of alleging facts sufficient to establish wrongful intent.  Counts VIII through XII of the Complaint contain only bare conclusory allegations regarding the alleged wrongful intent of City Defendants.  *See, e.g.* Am. Compl. ¶ 184 (Count VIII/Abuse of Process: "the true reason(s) for their actions are the improper and illegitimate 'dual purposes' described herein. . . ."); ¶ 187 (Count VII/Fraud: "Defendants, intentionally and/or knowingly, and/or in reckless disregard for the truth, made a series of false

and/or fraudulent misrepresentations and/or omissions…"); ¶ 189 (Count VII/Negligent

Misrepresentation:  "Defendants, intending to induce plaintiff to act, misrepresented material

facts, either knowing of the misrepresentations or without knowledge as to their truth or

falsity…"); ¶ 191 (Count IX/Intentional Infliction of Emotional Distress:  "The conduct of

defendants was extreme and outrageous, intentional and/or reckless…") ¶ 193 (Count X/Civil

Conspiracy:  "Defendants acted with a common purpose to do an unlawful act, or to do a lawful

act by unlawful means or for an unlawful purpose…").  The actual factual allegations in the

Complaint, if assumed to be true, only establish that the City Defendants acted within the scope

of their employment to collect Plaintiff's delinquent taxes and enforce the Judgment within the

timeframe permitted under Pennsylvania law.  *See* Am. Compl. at ¶¶ 26-127.

For these reasons, Counts VIII through XII of the Amended Complaint should be

dismissed as to the City and City Defendants.

> **5.    Plaintiff's Abuse of Process Claim (Count VIII) Fails to State A Claim Upon Which Relief Can Be Granted.**

"[T]o establish a claim for abuse of process under the law of Pennsylvania, it must be

shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to

accomplish a purpose for which the process was not designed, and (3) that harm was caused to

the plaintiff as a result."  *Keim v. Cnty. of Bucks*, 275 F. Supp. 2d 628, 634–35 (E.D. Pa. 2003).

Plaintiff alleges in conclusory fashion that the City and City Defendants used a legal process in

the state court proceedings for an "illegitimate" and "improper" purpose of recovering taxes,

interest, and penalties to finance City initiatives.  *See* Am. Compl. ¶ 184.   Plaintiff further

alleges that the state court judgment enforcement proceedings were used for the improper

purpose of interfering with and defending against this case.  *See id*.  This allegation is

conclusory, unsupported by any well-pled factual allegations, and entirely contradicted by the undisputed facts of the state court proceedings.

The record of the state court proceedings shows that the City used the legal process of filing the Tax Complaint, obtaining the Judgment, and attempting to enforce the Judgment so that it could collect the taxes, interest, and penalties that were due and owing.  *See* Am. Compl. ¶ 26-29.  The purpose of local taxes is to generate revenue for the City.  The purpose of judgment enforcement proceedings is to enforce judgments.

 Even assuming *arguendo* that the City's recent judgment enforcement efforts have inconvenienced Plaintiff and made his litigation of this case more difficult (and Plaintiff has not pled facts sufficient to establish any such inconvenience), this is a situation entirely of Plaintiff's own making.  The undisputed facts set forth in the Amended Complaint and the state court docket establish that the City and City Defendants have been attempting to collect and enforce the judgment since 2008, well before the beverage tax and Rebuild and well before Plaintiff filed this federal court case.  As Plaintiff admits, the City began its judgment enforcement efforts in 2008 by immediately attempting to levy two bank accounts used by Plaintiff's former law firm. Am. Compl. ¶¶ 28-30.  Now, after collection and settlement efforts failed and after Plaintiff still has not satisfied even a portion of the Judgment, the City has gone back to the valid enforcement mechanism that it attempted back in 2008.  What else could it do?  Plaintiff's interim filing of a lawsuit against the City is irrelevant and, as a matter of law, cannot establish an improper purpose for judgment enforcement efforts that have proceeded in the normal course for eleven years.

For these reasons, Count VIII should be dismissed pursuant to Rule 12(b)(6).

6.      **Plaintiff's Fraud Claim (Count IX) and Negligent Misrepresentation Claim (Count X) Fail to State A Claim Upon Which Relief Can Be Granted.**

The elements of a fraud claim under Pennsylvania law are:

(1) a representation;
(2) which is material to the transaction at hand;
(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;
(4) with the intent of misleading another into relying on it;
(5) justifiable reliance on the misrepresentation; and
(6) the resulting injury was proximately caused by the reliance.

*Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. 2014).

Plaintiff's fraud claim fails as a matter of law because there was no "representation" by any of the Defendants.  There is no allegation here that any of the Defendants represented to Plaintiff that the City had given up its efforts to collect and enforce the Judgment.

To the extent Plaintiff purports to allege a representation by omission (based on periods of relative inactivity or quiet in the state court proceedings), this theory also fails as a matter of law.  Under well-established Pennsylvania law, to state a claim for fraud an assertion of omission must be accompanied by a duty to speak.  *See Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1316 (Pa. Super. Ct. 1991).  "[A]n omission is actionable as fraud only where there is an independent duty to disclose the omitted information; and [] such an independent duty exists where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking disclosure."  *Matter of Estate of Evasew*, 584 A.2d 910, 913 (Pa. 1990).  There is no fiduciary relationship between Plaintiff and any of the Defendants, nor is such a relationship even alleged.

Plaintiff's negligent misrepresentation claim fails for the same reason.  Plaintiff has not alleged any misrepresentation, and he cannot allege an omission because the City and City Defendants are under no duty to speak.  *See Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d

35

Case 2:19-cv-02691-RBS   Document 23   Filed 09/17/19   Page 38 of 42

371, 380 (E.D. Pa. 1998) (applying "duty to speak" element to negligent misrepresentation claim under Pennsylvania law).

For these reasons, Plaintiff fails to state a claim for fraud or negligent misrepresentation and Counts IX and X should be dismissed with prejudice pursuant to Rule 12(b)(6).

>    **7.    Plaintiff's Intentional Infliction of Emotional Distress Claim (Count XI) Fails to State A Claim Upon Which Relief Can Be Granted.**

Under Pennsylvania law, "to support a claim of intentional infliction of emotional distress a plaintiff must allege conduct that: (1) is extreme and outrageous; (2) is intentional or reckless; and, (3) causes severe emotional distress." *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427–28 (E.D. Pa. 2000) (citing *Williams v. Guzzardi*, 875 F.2d 46 (3d Cir.1989)). The Court must decide, as a matter of law, whether conduct is "extreme and outrageous." *Id.* (citing *Kuzel v. Krause*, 658 A.2d 856, 860 (Pa. Commw. Ct. 1995). "Liability for intentional infliction of emotional distress 'has been found only where ... the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'" *Id.* (quoting *Hunger v. Grand Central Sanitation*, 670 A.2d 173 (Pa. 1996)).

Here, as a matter of law, the conduct alleged in the Complaint is not "extreme and outrageous." The essence of Plaintiff's Complaint is that the City improperly delayed in collecting delinquent taxes from Plaintiff and in enforcing the Judgment. However, the timing of the City's collection and Judgment enforcement efforts has been reviewed and upheld as valid by two Courts. Conduct that has withheld judicial scrutiny on two occasions cannot possibly be conduct that is "extreme and outrageous" under Pennsylvania's very stringent standard for IIED claims. Therefore, Count XI should be dismissed with prejudice.

**8.**   **Plaintiff's Civil Conspiracy Claim (Count XII) Fails to State A Claim Upon Which Relief Can Be Granted.**

"A claim for civil conspiracy under Pennsylvania law requires: '(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'"  *Egli v. Strimel*, 251 F. Supp. 3d 827, 840 (E.D. Pa. 2017).  Plaintiff's civil conspiracy claim fails as a matter of law for two reasons.  First, because his other claims fail to state a claim, Plaintiff cannot establish an underlying tort.  As a result, his civil conspiracy claim fails.  *See id.*  Second, "the allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation."  *Id.*  Again, Plaintiff's allegations of conspiracy are entirely speculative and conclusory.  The Complaint contains no well-pled factual allegations that support a conspiracy among the Defendants.  For these two reasons, Count XII should be dismissed with prejudice.

**C.**   **COUNT V (MAIL/WIRE FRAUD) AND IX (FRAUD) SHOULD BE DISMISSED PURSUANT TO RULE 9(B).**

Where mail and wire fraud are pled as the basis for a RICO violation, "the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity."  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).  "The particularity standard of Rule 9(b) may be satisfied by pleading 'the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation.'"  *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 342–43 (E.D. Pa. 2019) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  "Even prior to discovery, '[b]oilerplate and conclusory allegations are insufficient' to satisfy the particularity

requirement." *Id.* (quoting *New Legion Co. v. Thandi*, No. 18-778, 2018 WL 6329144, at *2 (E.D. Pa. Dec. 4, 2018) (Baylson, J.)).

Count V only alleges that the City "intentionally misled" Plaintiff into believing it had abandoned its efforts after the initial execution attempt. Am. Compl. ¶ 77. Plaintiff makes no reference whatsoever to any specific false or misleading statements nor any effort to inject precision into his pleadings. Plaintiff, therefore, has failed to meet the heightened pleading requirements of Rule 9(b) to sufficiently allege a violation of either 18 U.S.C. § 1341 or § 1343.

Similarly, Federal Rule of Civil Procedure 9(b) provides that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Pa. R.C.P. 9(b). Count IX merely recites the boilerplate elements of fraud. Most egregiously, the Amended Complaint contains no specific allegations as to the alleged fraudulent representation. Accordingly, Counts V and IX should both be dismissed pursuant to Rule 9(b).

## IV.    CONCLUSION

For all the reasons discussed herein, the City respectfully requests that the Court grant its Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim. As a threshold matter, the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and principles of comity bar this Court from deciding all Counts of this Amended Complaint. In addition, all twelve Counts of the Amended Complaint fail to state a claim upon which relief can be granted, for multiple reasons. Therefore, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the claims against the City and City Defendants should be dismissed with prejudice. Plaintiff should not be given further leave to amend. He has already amended once, adding only meritless claims and speculation. Further amendment would be futile given the legal insufficiency of Plaintiff's claims in this case.

38

Respectfully submitted,

Date: <u>September 17, 2019</u>

<u>/s/ Lydia Furst</u>
Lydia Furst
Deputy City Solicitor
Sean McGrath
Assistant City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-3573
Lydia.Furst@phila.gov

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD J. SILVERBERG, | : |
| Plaintiff, | : |
| | : |
| V. | : Case Number |
| | : 19-cv-2691 |
| CITY OF PHILADELPHIA, et al., | : |
| Defendants. | : |
| | : |
| | : |

## CERTIFICATE OF SERVICE

I, Lydia Furst, attorney for Defendants the City of Philadelphia, Mayor James Kenney, Marcel S. Pratt, Esq., Frank Breslin, Diana P. Cortes, Esq., Marissa O'Connell, Esq., Brian R. Cullin, Esq., and Kelly Diffily, Esq., certify that on this date, a true and correct copy of the Defendant's Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim, Memorandum of Law in support thereof, proposed Order, and accompanying Exhibits were filed via the Court's electronic filing system and available for downloading.

Date: September 17, 2019            /s/ Lydia Furst
                                    Lydia Furst
                                    Deputy City Solicitor
                                    Pa. Attorney ID No. 307450
                                    City of Philadelphia Law Department
                                    1515 Arch Street, 15th Floor
                                    Philadelphia, PA 19102
                                    (215) 683-3573
                                    lydia.furst@phila.gov

1