IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD J. SILVERBERG | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 19-2691 |
| CITY OF PHILADELPHIA, ET AL. | : |

# MEMORANDUM

**SURRICK, J.**                                                                                  **January 8**, **2020**

Presently before the Court are Defendants the City of Philadelphia, Mayor James Kenney, Marcel S. Pratt, Esq., Frank Breslin, Diana P. Cortes, Esq., Marissa O'Connell, Esq., Brian R. Cullin, Esq., and Kelly Diffily, Esq.'s (the "City Defendants") Motion to Dismiss Amended Complaint (ECF No. 23) and Plaintiff's response thereto (ECF No. 29). For the following reasons, the City Defendants' Motion will be granted.

## I. BACKGROUND

### A. Procedural History

On June 20, 2019, Plaintiff Richard Silverberg filed a Complaint, alleging that the City of Philadelphia (the "City"), its employees, and others engaged in unlawful tax collection practices in violation of various state and federal laws. (ECF No. 1.) On September 3, 2019, Defendants Linebarger Goggan Blair & Sampson LLP ("Linebarger"), a law firm, and Christopher Dean ("Dean"), an attorney at Linebarger (collectively the "Law Firm Defendants"), moved to dismiss the Complaint. (ECF No. 17.) That same day, the City Defendants also moved to dismiss the Complaint. (ECF No. 18.) Plaintiff then filed an Amended Complaint. (ECF No. 19.) On September 17, 2019, the City Defendants filed a motion to dismiss the Amended Complaint. (ECF No. 23.) The Law Firm Defendants filed a motion to dismiss on September 23, 2019.

(ECF No. 27.) On October 3, 2019, Plaintiff voluntarily withdrew all claims against the Law Firm Defendants. (ECF No. 32.) Only the City Defendants remain.

B. **Plaintiff's Allegations**

The Amended Complaint consists of the following twelve counts against the City Defendants: (Count I) infringement of Plaintiff's First and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983; (Count II) obstruction of justice, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1951; (Count III) obstruction of justice, in violation of RICO, 18 U.S.C. § 1512; (Count IV) obstruction of justice, in violation of RICO, 18 U.S.C. § 1503; (Count V) mail and wire fraud, in violation of RICO, 18 U.S.C. §§ 1341 and 1343; (Count VI) conspiracy, in violation of RICO, 18 U.S.C. § 1962(d); (Count VII) infringement of Plaintiff's First and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983; (Count VIII) common law abuse of process; (Count IX) fraud; (Count X) negligent misrepresentation; (Count XI) intentional infliction of emotional distress; and (Count XII) civil conspiracy. (Am. Compl., ECF No. 19.) The Amended Complaint alleges the following in support of these claims.

On March 11, 2008, in the Court of Common Pleas, Philadelphia County, the City filed a complaint against Plaintiff and his former law firm for unpaid business privilege and wage taxes that accrued between 1992 and 2004 (the "State Case"). (Am. Compl. ¶ 26, ECF No. 19.) Plaintiff and his law firm did not contest the claims and a default judgment was entered on June 3, 2008. (*Id*. ¶ 27.) On September 25, 2008, the City filed and served praecipes for writs of attachment against the law firm's banks. By November of 2008, the City had discontinued the writs of attachment. (*Id*. ¶¶ 28-30.) From November 8, 2008 to June 15, 2017, other than filing a suggestion of non-payment in June 2013, the City took no further action to execute upon or

enforce the default judgment or otherwise collect the taxes that were owed by Plaintiff and his law firm. (*Id.* ¶ 31.)

The Amended Complaint alleges that in 2017, the City suffered a revenue shortfall, in part because a new beverage tax was not as lucrative as expected. As a result, the City had to look for alternative sources of revenue. (*Id.* ¶¶ 62-64.) On June 15, 2017, Dean, acting as outside counsel for the City, sent Plaintiff a letter demanding immediate payment of the June 3, 2008 judgment, as well as accrued interest and penalties. The letter advised that if the outstanding debt was not satisfied, Plaintiff's property might be levied or seized. (*Id.* ¶ 65.) A lengthy email exchange between Dean and Plaintiff ensued. (*Id.* ¶ 66.) Dean claimed that the City was merely seeking to enforce its rights to collect on the June 3, 2008 judgment. According to Plaintiff, this latent, renewed effort to collect on the June 3, 2008 judgment was really designed to address the City's revenue shortfall. (*Id.* ¶ 68.)

On July 16, 2017, in the State Case, Plaintiff filed a motion for judgment of *non pros*, or in the alternative, to enjoin enforcement of the June 2008 judgment, asserting that the City's nine-year inactivity on the 2008 judgment demonstrated a lack of diligence by the City (the "State Court Motion to Enjoin Enforcement"). The Court of Common Pleas denied the State Court Motion to Enjoin Enforcement, concluding that the City's enforcement action was timely under the relevant limitations period. The Pennsylvania Commonwealth Court affirmed. (*Id.* ¶¶ 72-74.)

On April 9, 2019, Plaintiff sent an email to Jane Istvan, Chief Deputy City Solicitor of the Appeals Unit, complaining that the City was acting in bad faith by allowing tax judgments to sit for years and, in the meantime, accrue significant penalties and interest. (*Id.* ¶ 83.) Later that day, Defendant Kelly Diffily ("Diffily"), a senior appellate attorney in the City Law Department,

replied to the email, explaining that the Pennsylvania Commonwealth Court had vindicated the City's right to collect on the tax delinquency. The next day, she advised Plaintiff that attorney Drew Salaman ("Salaman") would take the lead in collecting the judgment against Plaintiff. On April 17, 2019, Salaman advised Plaintiff via email that although the principal tax delinquency was $41,009.17, the City was seeking $276,400.93 to satisfy the judgment, inclusive of fines, interest, and penalties. (*Id.* ¶¶ 84-87.) On April 23, 2019, Plaintiff sent via email to Salaman and Diffily a draft of the Complaint he filed in this matter. Plaintiff advised that he expected a final version of the Complaint to be ready for filing in the next few days. (*Id.* ¶ 88.) Six days later, on April 29, 2019, Defendant Diana P. Cortes ("Cortes"), the Chair of the Litigation Group in the City's Law Department, responded, advising that the City viewed the draft complaint as frivolous and would seek sanctions if Plaintiff filed it. (*Id.* ¶ 89.) According to Plaintiff, the City did not actually believe the draft complaint was frivolous and was really trying to intimidate Plaintiff so he would not avail himself of his rights in federal court. (*Id.* ¶ 90.)

From May 10, 2019, through the filing of the Amended Complaint, Defendant Brian R. Cullin ("Cullin"), Deputy City Solicitor, took additional actions with respect to the underlying State Case, which included engaging in discovery, filing various motions, and making settlement demands on Plaintiff. On June 14, 2019, Cullin conveyed the City's settlement position to Plaintiff in an email, advising that a lump sum payment of $185,000 would resolve the outstanding judgment. (*Id.* ¶ 93.) According to Plaintiff, Cullin's activities were intended as retaliation against Plaintiff for threatening to file a federal lawsuit against the City. (*Id.* ¶ 94.)

Plaintiff filed this action on June 20, 2019. On August 13, 2019, he served the Complaint and a motion for preliminary injunction on Defendants. Two days later, the City filed seven writs of attachment for various banks in connection with the State Case. (*Id.* ¶¶ 98-101.)

4

Plaintiff was not immediately served with copies of these writs and learned of them only because he had inspected the state court docket the day after they were filed. (*Id.* ¶ 102.) On August 29, 2019, Cullin froze and levied funds from Plaintiff's bank account. Plaintiff was not given prior notice of the levies, so he had no opportunity to defend against the actions on his account. (*Id.* ¶ 103.) The City had not sought to levy Plaintiff's accounts since 2008. Plaintiff alleges that the City's actions in August 2019 were a retaliatory response to his service of the Complaint and motion for injunctive relief in federal court. (*Id.* ¶¶ 104-06.) Plaintiff also alleges that Cullin purposefully delayed service of various state court filings to prevent Plaintiff from defending himself in the State Case. (*Id.* ¶ 113.)

On August 28, 2019, the City demanded $210,000 from Plaintiff to settle the State Case. Over $170,000 of that amount was based on interest and penalties. (*Id.* ¶ 127.)

## II. DISCUSSION

Plaintiff seeks redress in federal court for the City's allegedly unlawful tax collection practices. Federal courts are loath to interfere in state tax collection matters and routinely abstain from or otherwise decline to exercise jurisdiction over disputes involving state tax collection. This is one of those cases. Under Rule 12(b)(1), the Court does not have subject matter jurisdiction over this matter and must dismiss it without prejudice.

### A. Standard of Review

The City Defendants move to dismiss the Amended Complaint under Rules 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim. On a Rule 12(b)(6) motion, "courts 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)

(quoting *Phillips v. Cnty. Of Allegheny*, 515 F.3d 223, 233 (3d Cir. 2008)). "In order to defeat a Rule 12(b)(6) motion, plaintiffs' '[f]actual allegations must be enough to raise a right to relief above the speculative level….'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss'" under Rule 12(b)(6). *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The standard of review for motions brought pursuant to Rule 12(b)(1) is more complicated. "A district court has to first determine … whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case … do not support the asserted jurisdiction." *Id.* In a factual attack, "the District Court may look beyond the pleadings to ascertain the facts." *Id.* "In sum, a facial attack 'contests the sufficiency of the pleadings,'" *id.* (quoting *In re Schering Plough Corp.*, 678 F.3d at 243), "'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

The City Defendants challenge subject matter jurisdiction on the basis of the *Rooker-Feldman* doctrine, the *Younger* abstention doctrine, and principles of comity. Citing several

cases in this District, the City Defendants assert that these arguments all present factual challenges. We disagree. "A factual jurisdictional proceeding cannot occur until [the] plaintiff's allegations have been controverted." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977). The City Defendants "filed the attack before it filed any answer to the Complaint or otherwise presented competing facts. [Their] motion [is] therefore, by definition, a facial attack." *Aichele*, 757 F.3d at 358; *see also Askew v. Trustees of General Assembly of Church of the Lord Jesus Christ of the Apostolic Faith Inc.*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial.").

We note that the City Defendants attach three exhibits to their motion to dismiss: (1) a docket printout for the State Case; (2) the opinion of the Court of Common Pleas regarding its order denying Plaintiff's State Court Motion to Enjoin Enforcement; and (3) the opinion and order of the Commonwealth Court affirming the decision of the Court of Common Pleas. However, these documents do not raise factual disputes. *See BASF Corp. v. Edgemont Auto Body, Inc.*, No. 18-3981, 2019 WL 859223, at *2 (E.D. Pa. Feb. 22, 2019) (treating motion to dismiss for lack of subject matter jurisdiction as facial attack where receipt attached to motion to dismiss did not "controvert[] the plaintiff's allegations"). Indeed, they are all matters of public record and Plaintiff himself refers to them in his Amended Complaint. Accordingly, they may be properly considered on a facial attack. *See John G. v. Northeastern Educ. Intermediate Unit 19*, 490 F. Supp. 2d 565, 575 (M.D. Pa. 2007) ("If the motion is treated as a facial attack, the court may consider only the allegations contained in the complaint and the exhibits attached to the complaint, matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies, and 'indisputably authentic' documents

which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss.") (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)); *New York Shipping Ass'n, Inc. v. Waterfront Comm'n of New York Harbor*, No. 10-5633, 2011 WL 1042771, at * (D.N.J. Mar. 18, 2011) (holding that on a facial attack, the court may "consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents"), *aff'd by* 460 F. App'x 187 (3d Cir. 2012); *Bland v. Fairfax Cnty.*, No. 10-1030, 2011 WL 2580343, at *2 (E.D. Va. June 29, 2011) (same) (collecting cases); *cf. Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) (concluding that when a motion to dismiss is supported by a sworn statement of facts, it "must be construed as a factual, rather than a facial attack").[1]

Because the City Defendants' Motion presents a facial attack, we must "apply the same standard of review [we] would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Aichele*, 757 F.3d at 358. "[T]he plaintiff's complaint will survive facial dismissal only if it contains 'enough [factual] heft' establishing the plaintiff's claims rather than plaintiff's conjecture, or self-serving interpretations of actual events, or mere 'labels and conclusions, and a formulaic recitation of the elements of a

---

[1] Some courts appear to hold that attacks to subject matter jurisdiction on the basis of *Rooker-Feldman* and *Younger* are categorically factual. *See*, *e.g.*, *Shawe v. Pincus*, 265 F. Supp. 3d 480, 484-85 (D. Del. 2017) (collecting cases); *Jacobs v. Ocwen Loan Servicing, LLC*, No. 13-2518, 2014 WL 3893357, at *7 (D. Colo. June 6, 2014). As *Aichele* and *Mortensen* make clear, however, whether an attack is facial or factual depends on whether the challenge disputes the plaintiff's allegations.

cause of action.'" *Animal Science Prods., Inc. v. China Nat. Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 851 (D.N.J. 2008) (quoting *Twombly*, 550 U.S. at 555-57).[2]

**B.     The Court Does Not Have Subject Matter Jurisdiction over this Matter**

"Subject matter jurisdiction is a threshold requirement for asserting a claim in federal court." *Mangan v. Robbins*, No. 12-2462, 2013 WL 460289, at *3 (E.D. Pa. Feb. 7, 2013) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).  The Court "cannot proceed in the absence of subject matter jurisdiction." *Argen v. Kessler*, No. 18-963, 2019 WL 2067639, at *3 n.3 (D.N.J. May 10, 2019); *see also Battles v. Washington Metro. Area Transit Auth.*, 272 F. Supp. 3d 5, 10-11 (D.D.C. 2017) ("Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because '[o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further.'") (quoting *Ctr. For Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011)).  We will address the City Defendants' jurisdictional arguments first.

   *1.     The Court Lacks Subject Matter Jurisdiction under the* Rooker-Feldman *Doctrine*

"The *Rooker-Feldman* doctrine strips federal courts of jurisdiction over controversies 'that are essentially appeals from state-court judgments.'" *Cardillo v. Neary*, 756 F. App'x 150, 153 (3d Cir. 2018) (quoting *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014)).

---

[2]     Plaintiff does not appear to have taken a position on whether the City Defendants' jurisdictional arguments should be treated as facial or factual.  Because a facial analysis is more lenient towards plaintiffs than a factual one, our decision to treat the Motion as a facial attack gives Plaintiff the best chance to avoid dismissal on jurisdictional grounds.  *See Vargas v. Lynch*, 214 F. Supp. 3d 388, 393 (E.D. Pa. 2016) (citing *Mortensen*, 549 F.2d at 891) (On a factual challenge, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.").

The doctrine applies to "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 327 (3d Cir. 2000) (holding that under *Rooker-Feldman*, district courts lack jurisdiction over claims in federal court that are "inextricably intertwined with a previous state court adjudication"). "[T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil*, 544 U.S. at 284).

Several courts have applied *Rooker-Feldman* where a plaintiff files a federal lawsuit to "get around" a state court tax judgment. *See Marquardt v. Supervisor of Dep't of Assessments & Taxation of Calvert Cnty.*, 195 F. Supp. 2d 706, 710 (D. Md. 2002) (dismissing claim that tax reassessment, which was upheld by state appellate court, violated the Contracts Clause of the United States Constitution); *see also Kepoint Preservation Trust Org. ex rel. Brown v. Fisher*, 173 F. App'x 191, 194 (3d Cir. 2006) (affirming dismissal of claim that real estate transfer taxes violated Contracts Clause and Pennsylvania law where earlier Pennsylvania court rulings that were adverse to plaintiff were "inextricably intertwined" with plaintiff's claims in federal court). In *Holt v. Lake County Board of Commissioners*, 408 F.3d 335 (7th Cir. 2005), for example, the plaintiff lost possession of his property when the county sold it to recover unpaid taxes. The plaintiff challenged the validity of the tax sale in various state court actions, but was

unsuccessful. He then filed a suit in federal court under 42 U.S.C. § 1983, alleging that he was deprived of his property without due process. *Id*. at 335. On appeal, the Seventh Circuit agreed with the district court that the *Rooker-Feldman* doctrine precluded federal subject matter jurisdiction. Relying on *Exxon Mobil*, the court reasoned that the "injury was caused by the state court judgments upholding the tax sale and evicting [the plaintiff] from his property" and that "absent the state court's judgment evicting him from his property, [the plaintiff] would not have the injury he now seeks to redress." *Id*. at 336. The court also recognized that "a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Id*. (quotations omitted).

The four *Rooker-Feldman* requirements are met here. First, as in *Holt*, Plaintiff lost in state court (twice). Not only did the Court of Common Pleas issue a default judgment against him related to unpaid taxes, but Plaintiff's State Court Motion to Enjoin Enforcement of the default judgment was denied and the order was affirmed on appeal. Second, also as in *Holt*, Plaintiff has come to federal court because of those adverse state court judgments. If the default judgment was never entered against him, or if he was successful on the State Court Motion to Enjoin Enforcement, there would be no injury for which to seek redress in this forum. Third, Plaintiff did not initiate this action until June 20, 2019, over a month after the Commonwealth Court's April 4, 2019 order affirming the decision of the Court of Common Pleas on the State Court Motion to Enjoin Enforcement. (*See* Def. Ex. C.) Fourth, although he denies it, Plaintiff is essentially asking us to review and overturn the state court judgments. On this point, Plaintiff suggests that he does not take issue with the state court judgments and, instead, is challenging the way in which state actors are going about enforcing the judgment, including the delay in

11

enforcement which allegedly lulled Plaintiff into believing that he would not have to pay the judgment. However, Plaintiff made this argument in his State Court Motion to Enjoin Enforcement. (*See* ECF No. 23-2.) The Court of Common Pleas rejected it, reasoning that "[i]t is irrelevant whether [the City] failed to execute[] on its default judgment over the last nine years … because (1) the judgment was already entered in favor of [the City] … and (2) [the City] has 20 years to execute on its judgment." (*Id.*) (citing 42 Pa. Cons. Stat. § 5529(a)). No matter how Plaintiff casts or recasts his claims in this Court, we cannot revisit that decision here. *See FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) ("'*Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling.'") (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)); *see also United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) ("A federal complainant cannot circumvent [*Rooker-Feldman*] by asserting claims not raised in the state court proceedings or claims framed as original claims for relief.").

2. *The Court Lacks Subject Matter Jurisdiction over Plaintiff's Non-§ 1983 Claims under the* Younger *Abstention Doctrine*

We addressed the *Younger* abstention doctrine in our August 27, 2019 Memorandum and Order denying Plaintiff's initial requests for preliminary injunctive relief. *See Silverberg v. City of Philadelphia*, No. 19-2691, 2019 WL 4059015 (E.D. Pa. Aug. 27, 2019). As we explained, "[t]he Younger abstention doctrine 'reflects a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" *Id.* at *6 (quoting *Cresci v. BCB Cmty. Bank*, 728 F. App'x 145, 148 (3d Cir. 2018)). "A federal court should abstain under the *Younger* doctrine when there are (1) ongoing state proceedings that are judicial, (2) the proceedings implicate important state interests, and (3) the proceedings afford an adequate opportunity to raise the federal claims." *Id.* (quoting *Cresci*, 728 F. App'x at 148). "In

12

these circumstances, federal courts should abstain unless there is a showing of 'bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]'" *Cresci*, 728 F. App'x at 148 (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)).

Although the *Younger* doctrine originally concerned only pending state criminal proceedings, the Supreme Court has since extended the doctrine to "particular state civil proceedings that are akin to criminal prosecutions, or that implicate a [s]tate's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) (internal citations omitted). This includes "civil enforcement proceedings," *id*. at 78, and the "collection of state taxes." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976) (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297 (1943) ("This Court has recognized that the federal courts, in the exercise of the sound discretion which has traditionally guided courts of equity in granting or withholding the extraordinary relief which they may afford, will not ordinarily restrain state officers from collecting state taxes where state law affords an adequate remedy to the taxpayer.")).

In our earlier opinion on the motions for preliminary injunctive relief, we held that

> The State Case is precisely the kind of state proceeding to which *Younger* abstention applies. The State Case is an ongoing judicial proceeding, it involves important state interests regarding the enforcement of judgments and the collection of taxes, and the proceedings afford, and have afforded, [Plaintiff] an adequate opportunity to challenge both the judgment and its enforcement.

*Silverberg*, 2019 WL 4059015, at *6. We see no reason to depart from our prior holding. We are cognizant of Plaintiff's allegations of bad faith and harassment by the City Defendants, but tax collection is not pleasant for anyone under any set of circumstances. Reading the Amended Complaint in the light most favorable to Plaintiff, the City Defendants' tax collection activities

13

are, at most, aggressive, but far short of "extraordinary." *See Cresci*, 728 F. App'x at 148. Furthermore, as the City Defendants explain, Plaintiff still has the opportunity to challenge enforcement of the tax judgments in the State Case. Under the applicable state court rules, "execution may be stayed by the court as to all or any part of the property of the defendant upon its own motion or application of any party in interest showing (1) a defect in the writ, levy or service; or (2) any other legal or equitable ground therefor." Pa.R.C.P. 3121.

There is one caveat to our determination under *Younger*. Plaintiff's § 1983 claims—which he first raised in his September 3, 2019 Amended Complaint, *after* we issued our August 27, 2019 opinion—must be treated differently than his non-§ 1983 claims. According to the most liberal reading of these new claims, the City Defendants' tax collection activities violated Plaintiff's free speech and due process rights under the First and Fourteenth Amendments, respectively. (*See* Am. Compl. ¶¶ 129 & 181.) "Where a plaintiff is seeking damages based on a state official's alleged unconstitutional conduct, the second prong of the *Younger* test cannot be satisfied." *UPMC v. City of Pittsburgh*, No. 13-563, 2013 WL 5777157, at *11 (W.D. Pa. Oct. 25, 2013) (citing *Addiction Specialists, Inc. v. The Twp. of Hampton*, 411 F.3d 399, 414-15 (3d Cir. 2005); *Gwynedd Props.*, 970 F.2d at 1201-03; *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 748 (3d Cir. 1982)); *see also Addiction Specialists*, 411 F.3d at 410 ("alleged discriminatory and unconstitutional actions do not implicate important state interests"). Accordingly, the *Younger* doctrine does not apply to Plaintiff's § 1983 claims, Counts I and VII of the Amended Complaint.

### 3. Under Principles of Comity, the Court Cannot Entertain Plaintiff's § 1983 Claims

"'[P]rinciples of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration.'" *Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d 394, 400 (3d Cir. 2003) (quoting *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm.*, 515 U.S. 582, 586 (1995)); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719 (1996) ("[A] federal court should not entertain a 42 U.S.C. § 1983 suit for damages based on the enforcement of a state tax scheme.") (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115 (1981)). "'[T]axpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts' so long as 'plain, adequate, and complete' remedies are available in state court." *Smiles v. Cnty. of Berks*, 778 F. App'x 84, 85 (3d Cir. 2019) (internal citation omitted) (quoting *McNary*, 454 U.S. at 116); *see also Kerns v. Dukes*, 153 F.3d 96, 101 (3d Cir. 1998) ("Taken together, the Tax Injunction Act and the Supreme Court's decision in *McNary* make it clear that a federal court cannot entertain a suit posing either an equitable or a legal challenge to state or local taxes ('any tax under state law') if a sufficient remedy (a remedy which the Tax Injunction Act terms 'plain, speedy and efficient' and which comity views as 'plain, adequate and complete') is available in state court.") (internal citation omitted) (quoting *McNary*, 454 U.S. at 115).[3]

In *UPMC v. City of Pittsburgh*, 2013 WL 5777157, UPMC brought several § 1983 claims against Pittsburgh for violating various constitutional rights in connection with city tax

---

[3] The Tax Injunction Act states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. We need not address this statute in any more depth here.

15

proceedings. UPMC alleged that Pittsburgh filed a sham lawsuit and publicly defamed UPMC to bully UPMC into paying certain payroll taxes. *See id*. at *2. The court found that UPMC's claims "challeng[ed] the manner in which [Pittsburgh] ha[d] sought to collect taxes from it" and pertained to "how [UPMC's] own tax liability [was] being affected by the way in which a taxing authority [was] applying and enforcing the tax laws." *See id*. at *7. The court held that "to deem the City Defendants' tax collection efforts to be unconstitutional while those efforts are the subject of litigation in state court would be the epitome of federal interference in state tax matters and would pose a real risk of disrupting [Pittsburgh's] administration of its tax scheme." *Id*. (citing *Quackenbush*, 517 U.S. 706; *McNary*, 454 U.S. 100).

Plaintiff likewise uses his § 1983 claims as a vehicle to challenge the manner in which the City is collecting various taxes. As in *UPMC*, the City's tax collection efforts are the subject of ongoing state court litigation. Under longstanding principles of comity, we cannot consider Plaintiff's § 1983 claims and must defer to the State Case, in which Plaintiff has had and continues to have an opportunity to be heard.

### C. The Court Need Not and Cannot Consider the City Defendants' Arguments for Dismissal under Rule 12(b)(6)

We are satisfied that under *Rooker-Feldman*, *Younger*, and principles of comity, we do not have subject matter jurisdiction to hear Plaintiff's claims. "[T]he rule is strict that once a court determines that it lacks subject matter jurisdiction, it can proceed no further." *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997); *see also United States v. Southland Gaming of the Virgin Islands, Inc.*, 182 F. Supp. 3d 297, 317 n.30 (D.V.I. 2016) ("In view of the Court's resolution of this matter on the threshold issue of subject matter jurisdiction, it need not reach the other grounds for dismissal."). Accordingly, we decline to consider the City Defendants' arguments for dismissal under Rule 12(b)(6).

III.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint will be granted.  Because the basis for dismissal is lack of subject matter jurisdiction, dismissal will be without prejudice.  *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice'").

An appropriate order follows.

                            **BY THE COURT:**

                            _____
                            **R. BARCLAY SURRICK, J.**